## TOWNS v. TRADERS & GENERAL INS. CO.

### No. 1911.

Court of Civil Appeals of Texas. Waco.

June 17, 1937.

Richard & A. P. Mays, of Corsicana,·for appellant.

Lightfoot, Robertson, Saunders & Gano, Robertson, Leachman, Payne, Gardere & Lancaster, and Claude Williams, all of Fort Worth, for appellee.

ALEXANDER, Justice.

This is a workmen's compensation suit. R. A. Towns, the injured employee, entered into a purported settlement agreement, which was approved by the Industrial Accident Board, and the amount provided therein was paid to him. He later brought this suit to set aside the settlement agreement on account of alleged fraud in its procurement and to recover the compensation due him under the statute. At the conclusion of plaintiff's testimony, the court instructed a verdict for the insurance company. The plaintiff appealed.

Since the court withdrew the case from the jury and rendered judgment for the appellee on an instructed verdict, we must accept appellant's testimony as true and give it the most favorable construction. The evidence shows that Towns, while working for A. F. Day Construction Company, was sent to Hobbs, N. M., to assist in building a pipe line, and, while he was so engaged, a ditch bank caved in on him, and as a result he received a severe injury in the abdomen. Evidence of a hernia and possibly other internal injuries immediately appeared. He was carried to a local physician for examination and within a few hours thereafter transported by automobile to Odessa, Tex., and thence by train to Dallas, where the offices of his employer and that of the insurance carrier were situated. About 2 days and nights were consumed in making the trip, during which time Towns was suffering great pain from his injury and received practically no sleep. He was sent by his employer in Dallas to

the office of the insurance company, where he contacted Chamberlain, the insurance adjuster. From there he was sent to the office of the company physician and after several hours delay he was examined and diagnosed as suffering from hernia. He returned to the office of the adjuster where negotiations for settlement were begun by the adjuster. Towns testified that he had had practically no sleep during the preceding 2 days and nights and was without funds and was suffering with great pain from his injuries and was very nervous, and that he was wholly unfamiliar with the provisions of the Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8306 et seq.) and the compensation allowed thereunder. Chamberlain, the claim adjuster, who was thoroughly familiar with the provisions of the Workmen's Compensation Law and the manner in which his company handled claims, told Towns that 60 per cent. of the average weekly wage for 26 weeks was the most that was paid in a hernia case; that this amount was paid only in a very severe case and that in Towns' case, 8 or 10 weeks would be the maximum allowance. Towns had been earning $5 per day, working 7 days a week. Compensation alone for 26 weeks would have exceeded $400. The adjuster offered him $200 in full settlement of his claim, and, after being informed by Chamberlain as to the maximum that he could recover for his injury, Towns offered to take $500. During these negotiations Towns grew so nervous that he felt he could no longer remain in Chamberlain's office. He arose to leave, informing Chamberlain that he was going home and that the company could send him his weekly allowance. Chamberlain said, "Wait a minute. We can't do that any more." And Towns replied. "Why can't you just pay me by the week and just take care of me down there" and Chamberlain replied, "We don't do that any more." They finally agreed on a settlement in full for $375, which amount was paid to Towns shortly thereafter. Towns went home and was operated on for hernia at his own expense and by his own physician. When he had apparently recovered from his operation and after returning home from the hospital, complications arose which required another and more radical operation in the abdomen. The physicians were unable to say whether the latter trouble was the result of the previous operation or whether it was due to an injury to the intestines as the result of the original accident. At any rate, Towns remained in the hospital the second time for several weeks and was unable to work at the time of his trial, which was about 4 months after his original injury.

 It is quite evident that the claim adjuster made a false statement to Towns when he informed Towns that 60 per cent. of his average weekly wage. for 26 weeks was the most that was paid in cases of severe hernia, and that in Towns' case he could recover for only 8 or 10 weeks. Under the statutes, art. 8306, § 12b, an injured employee, for ordinary hernia, if he refuses an operation at the company's expense, is entitled to compensation for 52 weeks. If he accepts an operation and it is successful, the company must pay therefor, and in addition must pay compensation for 26 weeks, and, if the operation is not successful, he is entitled to compensation under the general provisions of the law the same as if an operation had not been performed. Said adjuster also made a false statement when he informed Towns that he could not go home and receive his compensation by the week and that the company did not pay claims that way any longer; that is, we assume that the latter statement was false, because the company was bound under the law to pay its claims in weekly installments, as provided for in the statute, and was receiving premiums for so doing, and we will not assume that it was operating in open violation of the law.

 It is appellee's contention that the misrepresentations, if any, made by Chamberlain, were misrepresentations as to a matter of law and were therefore mere expressions of opinions and cannot form the basis of fraud. It may be conceded that, generally speaking, everyone is presumed to know the law and consequently one cannot be misled in a legal sense by a mere expression of an opinion as to what the law is. But where one party, who possesses superior knowledge as to the law, takes advantage of the other party's ignorance in that respect and intentionally makes a misrepresentation concerning the law for the purpose of deceiving the other party and actually succeeds in that respect, he may be held responsible for his conduct. 20 Tex.Jur. 28; 26 C.J. 1208, 1209; 12 R. C.L. 296, § 60; 15 Tex.Law Review, 133. Here, if appellant's testimony is to be believed, Chamberlain falsely represented to Towns that 60 per cent. of the average weekly wage for 26 weeks was the most that was allowed in a severe case of hernia,

462

and that in Towns' case compensation for 8 or 10 weeks would be the maximum allowance; whereas, the statute expressly required the insurance company to pay compensation for a minimum of 26 weeks, and in addition to pay for an operation, or, if the operation was refused, to pay compensation for 52 weeks. Presumably, these representations were made for the express purpose of deceiving the employee. The parties were by no means dealing on an equal footing. Chamberlain was an expert in the application of the provisions of the Workmen's Compensation Law, while Towns was ignorant of its provisions. If these were all the facts, under many authorities such misrepresentations would be sufficient to form the basis of fraud and to authorize the setting aside of the purported settlement agreement. Safety Casualty Co. v. McGee (Tex.Civ.App.) 93 S.W.(2d) 519; Garsee v. Indemnity Insurance Co. (Tex. Civ.App.) 47 S.W.(2d) 654, 656. But this is not all. Towns was wounded and had suffered intense pain and had been practically without sleep for the preceding 2 days and nights. He was without funds and was in desperate need of physical relief. He had gone to the only source from which he had a lawful right to expect relief, and while there seeking only the rights guaranteed to him under the statutes, the claim adjuster took advantage of the situation to drive a hard bargain. The adjuster did more than merely misrepresent the law. He misrepresented the manner in which such claims are paid, for he represented to Towns, in effect, that the company no longer paid weekly benefits, as it was required to do under the law, and that Towns could not go home and receive the benefits guaranteed to him by the statutes. When Towns proposed to leave the office and stand on his legal rights, he was told that he could not do this and was threatened with the loss of everything. In view of his financial distress and the great physical pain from which he was seeking relief, this threat was doubtless very potent in bringing him to terms of settlement satisfactory to the insurance company. In this connection, we take note of the insurance company's contention that Towns knew that Chamberlain was representing the company and not the injured employee; that the parties were dealing at arm's length; and that appellant had no right to expect Chamberlain to advise him as to his legal rights in the premises. This may all be true, but appellant did have a right to expect of Chamberlain that he deal honestly with him, that he tell the truth, and that he should not actively mislead appellant. These standards of ancient origin are still recognized in all civilized countries, and any violation thereof for financial gain justly merits the condemnation of the court.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.