SAFETY CASUALTY COMPANY V. JOEL ROBERT McGEE, JR.

No. 7140. Decided April 19, 1939.
Rehearing overruled May 31, 1939.
(127 S. W., 2d Series, 176.)

*N. L. Dalby,* of Texarkana, *J. W. Hassell* and *J. W. Hassell, Jr.,* both of Dallas, for plaintiff in error.

The evidence was insufficient to authorize or support a judgment rescinding the settlement agreement or release, and it was error for the court to enter a judgment rescinding and cancelling the same. Garsee v. Indemnity Ins. Co., 47 S. W. (2d) 654; White v. Peters, 185 S. W. 659; Massirer v. Milam, 223 S. W. 302.

*King, Mahaffey, Wheeler & Bryson* and *Otto H. Atchley,* both of Texarkana, and *C. E. Bryson, of Houston,* for defendant in error.

Redress may be had if one party possesses superior knowledge and took advantage of the other party's ignorance of the law to mislead him by studied concealment or by misrep-

resentations, and this is especially true where confidential relation obtain. Moreland v. Atchison, 19 Texas 303; Holt v. Gordon, 176 S. W. 902; 26 C. J. 1208.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The suit was filed by defendant in error McGee, an employee of Magnolia Petroleum Company, against plaintiff in error Safety Casualty Company, insurer under the Workmen's Compensation Law, to set aside a compromise settlement agreement of McGee's claim for compensation for personal injuries received in the course of his employment, it being alleged that the agreement of compromise was induced by fraudulent representations made by the insurer's agent, Dr. Mann.

The facts found by the jury in answer to special issues are in substance as follows: Immediately before the signing of the compromise settlement agreement on May 31, 1933, Dr. Mann represented to McGee that he was entitled under the Workmen's Compensation Law to only the sum of $135.00 as full compensation for injuries received by him on January 30, 1933. Such representation was false and Dr. Mann knew it was false when he made it. Dr. Mann made the representation with the intention of inducing McGee to sign the compromise settlement agreement and the compromise settlement receipt. McGee believed that the representation was true, relied upon it and was induced by it and but for it would not have made the compromise settlement agreement. McGee was injured in the usual course of his employment with Magnolia Petroleum Company on January 30, 1933, which injury resulted in total incapacity. The total incapacity will not be permanent. Dr. Mann knew of such incapacity of McGee before the compromise settlement agreement and receipts were signed on May 31, 1933. The average weekly wages of McGee for one year prior to January 31, 1933, were $22.00.

The trial court's judgment setting aside and cancelling the compromise settlement agreement and receipt was affirmed by the Court of Civil Appeals, Associate Justice Hall dissenting. 93 S. W. (2d) 519.

The first point presented by plaintiff in error is that neither the pleadings of defendant in error nor the facts make a cause for rescission of the agreement and the release, because the statement made by Dr. Mann, the insurer's agent, to McGee was not a representation of fact but the expression of the

agent's opinion as to McGee's legal rights, upon which representation McGee was not permitted to rely, when no confidential relation existed between the agent and McGee and the agent neither withheld nor attempted to withhold from McGee any material fact relative to the insurer's liability, McGee being fully informed as to the nature and extent of his injury and knowing that the adjuster in making the statement was acting in the interest of his principal.

■ The representation made by Dr. Mann to McGee was as to a matter of law, the amount of compensation to which McGee was entitled under the Workmen's Compensation Act. The general rule, often repeated, is that fraud cannot be predicated upon misrepresentations as to matters of law. The reason usually given for the rule is that everyone is presumed to know the law, and hence has no right to rely upon representations made to him by another, and that such representations are to be treated as mere statements of opinions and not of fact. Black on Rescission and Cancellation, (2d Ed) Vol. 1, pp. 186-188, Sec. 71; 12 R. C. L. pp. 295-296, Sec. 59.

This rule, like most general rules, is subject to exceptions. As early as 1857 Associate Justice Wheeler said of it: "The general rule, it has been truly said, is justified by considerations of public policy; and yet so harsh a rule, founded upon a presumption so arbitrary, ought to be modified in its application by every exception which can be admitted without defeating its policy." Moreland v. Atchison, 19 Texas, 303, 310. He expressed the opinion that corruptly deceiving one as to matters of law amounts to fraud in a legal sense, where advantage is taken of the ignorance of a party.

■ One of the well established exceptions to the general rule is that relief may be granted on account of misrepresentation of law or of legal rights when there is a relation of trust and confidence between the parties. 12 R. C. L. pp. 296-297, Sec. 60; Black on Rescission and Cancellation, (2d Ed.) Vol. 1, pp. 188-189, Sec. 71; 26 C. J. pp. 1207-1209, Sec. 106. There was no confidential relation between Dr. Mann and McGee when the agreement of compromise was made. The authorities, however, establish another exception to the general rule. The text of Ruling Case Law, immediately following the statement that relief may be granted because of representation of law where there is a relation of confidence, contains the following: "The same is true where one who himself knows the law deceives another by misrepresenting the law to him, or knowing him to be ignorant of it, takes advantage of him

through such ignorance, or where the person to whom the representations are made relies upon the supposed superior knowledge and experience of the other party and on his statement that it is unnecessary or inadvisable for him to consult a lawyer." 12 R. C. L. p. 296, Sec. 60.

Similarly, Mr. Black says: "And again, aside from such relationship (that of trust or confidence), if one of the parties is ignorant of the law or of his legal position or rights, and the other is aware of this fact, and is also perfectly informed of the legal principles, rules, or statutes applicable to the existing state of affairs, and takes advantage of his superior knowledge and of the other's ignorance, and so misrepresents and misstates the law as to induce him to enter into an inequitable bargain, or to part with rights or property which he might have retained, it is considered such fraud as to justify a court of equity in giving relief." Black on Rescission and Cancellation (2d Ed.) Vol. 1, pp. 188-189, Sec. 71.

In Ramey v. Allison, 64 Texas 697, a woman was induced to execute a deed of trust by representations made by an attorney at law that the property was her homestead and could not be affected by the deed of trust. The Supreme Court affirmed the trial court's judgment granting her relief from foreclosure of the deed of trust, the jury having returned a verdict in her favor. There was no relation of special trust or confidence between the parties. The court held that under the circumstances the plaintiff was entitled to protection the same as if the representations had been as to matters of fact, saying in the opinion:

"Her ignorance of the law, and his superior acquaintance with it, enabled him to induce her to sign an instrument having the reverse legal effect of that which he had asserted it to possess, and which she supposed it would have. A contract obtained in such a manner is fraudulently obtained, if the representations were fraudulently made and intended to deceive; if not thus fraudulently conceived and intended, they are not the less misleading and inducing a fatal mistake on the part of the party relying on their correctness. In either case, the contract is not that of a person giving consent to it under circumstances that will render it binding in equity."

The opinion by Associate Justice O'Quinn in Garsee v. Indemnity Insurance Company of North America, 47 S. W. (2d) 654, 656-657, contains the following:

"The general rule is that misrepresentation or conceal-

ment as to a matter of law cannot constitute remedial fraud, because everyone is presumed to know the law, and therefore cannot in legal contemplation be deceived by the erroneous statements of law, and such representations are ordinarily regarded as mere expressions of opinion, on which the hearer has no legal right to rely. 12 R. C. L. p. 295, Sec. 59; 26 C. J. p. 1207, Sec. 106(E). But it is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood. *Likewise, redress may be had if one party possesses superior knowledge and took advantage of the other party's ignorance of the law to mislead him by studied concealment or by misrepresentations, and this is especially true where confidential relations obtained."* (Our italics)

In Towns v. Traders & General Insurance Company, 107 S. W. (2d) 460, the allegations were, and the plaintiff's evidence tended to prove, that a compromise agreement was induced by the adjuster's false representation that the injured employee was entitled to payment under the Workmen's Compensation Law for a certain number of weeks, and also by false representations of fact. The trial court's judgment in favor of the insurer, pursuant to instructed verdict, was reversed and the cause remanded for trial. The opinion of the Court of Civil Appeals, written by Associate Justice Alexander, expressed the conclusion that even had there been no false representations of fact, the false representation as to the amount of compensation to which the emplyoyee was entitled under the law would be sufficient to form the basis of fraud and to authorize the setting aside of the settlement agreement, it being shown by the plaintiff's testimony (accepted as true in testing the correctness of the trial court's action instructing a verdict) that the adjuster was an expert in the application of the provisions of the Workmen's Compensation Law, while the employee was ignorant of its provisions. The exception to the general rule with respect to representations as to matters of law is thus stated in the opinion: "But where one party, who possesses superior knowledge as to the law, takes advantage of the other party's ignorance in that respect and intentionally makes a misrepresentation concerning the law for the purpose of deceiving the other party and actually succeeds in that respect, he may be held resonsible for his conduct." Other authorities support the principle announced in the foregoing quotations. Schaeffer v. Blanc, 87 S. W. 745; Barber v Keeling, 204 S. W. 139; Bankers' Life & Mortgage

Association v. Pitman, 115 S. W. (2d) 1008; Madison Trust Company v. Helleckson, 216 Wisc. 443, 257 N. W. 691; 96 A. L. R. 992, and Note, pp. 1001 and following; 15 Texas Law Review pp. 133-134.

■ The facts found by the jury and· established by undisputed evidence bring the instant case within the exception as stated by the above cited authorities. Dr. Mann, an experienced adjuster of compensation claims for plaintiff in error, was thoroughly informed in the application of the provisions of the Workmen's Compensation Law, while both defendant in error and his father, Dr. McGee, who was present when the settlement was made, were uninformed as to the terms and provisions of the compensation law and had no experience in their application. Dr. Mann testified that he was a physician employed by Magnolia Petroleum Company and loaned by it to Safety Casualty Company for handling settlements of compensation claims and that he had been with the casualty company since its organization in 1931, that prior to the making of the compromise settlement with McGee he had made "a good many" settlements for the casualty company with employees of the petroleum company, and that he had a "pretty fair idea" of the Workmen's Compensation Law. His testimony shows that he was fully informed as to the details of the Workmen's Compensation Law, particularly those relating to total disability and partial disability and the method of determining and computing the amount of compensation to be paid. In making the settlement with McGee Dr. Mann acted under a letter of instructions from Westerlage, the general manager of Safety Casualty Company, advising him that McGee had returned to work after an incapacity of ten weeks and that his weekly rate of compensation was $13.26 and suggesting that he make settlement with McGee by paying him a total of $132.60.

Defendant in error McGee, who was thirty-two years of age at the time of the trial, worked as an electrician for seven or eight years before the beginning of his employment by Magnolia Petroleum Company in February 1931, and during the years 1918 to 1920 was an oil scout or tool pusher for his father, who was engaged in drilling oil wells near Wichita Falls. When in the electric business McGee worked himself and employed men to assist him but did not have more than three men employed at any time. He carried no workmen's compensation in that business and did not know whether he was required to carry it or not. He did not know whether compensation insurance

was carried by his father when he was engaged in the oil business.

McGee's father was a practicing physician, engaged continuously in the practice of medicine from the time of his graduation, except a year or a year and a half when he was drilling wells near Wichita Falls. He had lived at New Boston all of his life and practiced medicine there for about thirty years. Both defendant in error and his father testified that they believed Dr. Mann's statement as to the amount of compensation to which defendant in error was entitled under the law to be true and relied upon it. Defendant in error testified that when Dr. Mann approached him to make the agreement of settlement he asked him and his father whether they knew how the amount of compensation insurance was calculated and was told that they did not, and that he thereupon proceeded to tell them that he knew how to determine it, stating that he had made adjustments from time to time for the casualty company, that the compensation was calculated at so much per week on the basis of earnings during the prior year, that for the weeks that he had been disabled defendant in error was entitled to but $133.00 under the law, because no compensation was paid for any partial disability after he went to work.

While part of the foregoing facts is taken from the testimony of defendant in error, it is apparent that the jury accepted his testimony and that of his father as true in these respects, when it found that the representation made by Dr. Mann was knowingly false and made with the intention of inducing McGee to sign the compromise settlement agreement, that McGee believed the representation to be true, relied upon it, was induced by it, and but for it would not have made the settlement.

Plaintiff in error in its brief concedes that fraud can be predicated upon misrepresentation as to a question of law in cases of imposition by the educated, shrewd and experienced upon the inexperienced, ignorant and uneducated, but argues that the instant case does not fall within that exception, because defendant in error was educated in high school and college, received technical training in electrical engineering and engaged in business for a number of years. Experience, education and ignorance are relative terms. As said by Associate Justice Fly in Schaeffer v. Blanc, 87 S. W. 745, 746, "In each case of fraud dependence must be had upon the special circumstances surrounding it, and no definite rule can be laid down as to what degree of ignorance or condition of mind

will vitiate it." Although defendant in error was not educated, not illiterate, and not without business experience, he was, when the representation was made to him, ignorant as to the terms and provisions of the Workmen's Compensation Law and without experience in calculating the amount of compensation payable under it. Dr. Mann, on the other hand, was an experienced adjuster of claims under that law, understood its provisions and knew how to determine the compensation payable to an injured employee either for total disability or for partial disability. The parties in their negotiations for settlement were not on equal footing. There was great disparity between the knowledge of the expert adjuster and that of defendant in error with respect to the particular subject about which the representation was made. According to the jury's findings, Dr. Mann used his superior knowledge of the subject in which he was an expert to take advantage of the ignorance of defendant in error as to that subject and mislead him.

■ The argument that McGee could readily have ascertained the amount of compensation due him, and therefore should not have relied upon Dr. Mann's representations, is answered by the following rule asserted in an early decision and often quoted with approval:

"When once it is established that there has been any fraudulent misrepresentation, . . . by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by further inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue . . . for the purpose of drawing me into a contract, can not accuse me of want of caution, because I relied implicitly upon your fairness and honesty.'" Labbe v. Corbett, 69 Texas 503, 509, 6 S. W. 808; Buchanan v. Burnett, 102 Texas 492, 495, 119 S. W. 1141.

■ Invoking the general rule to which this Court is committed by Russell v. Industrial Transportation Company, 113 Texas 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1, that proof of pecuniary loss or damage must be made in a suit to rescind for fraud, plaintiff in error takes the position that defendant in error failed to make a case, because no issue was submitted to the jury and answered as to the duration of McGee's incapacity. The jury found that the injury to McGee resulted in total incapacity, that such incapacity would not be permanent, and that his average weekly wages were $22.00. The

Court of Civil Appeals expressed the opinion that the undisputed testimony showed that McGee was totally disabled continuously until the date of the trial, November, 1933. It is our opinion, after carefully examining the statement of fact, that there is evidence raising an issue of fact as to total incapacity of defendant in error from the end of the ten weeks' period for which he was paid to the time of the trial. We are further of the opinion, however, that the undisputed evidence shows that defendant in error was partially disabled for a period of at least several weeks after the termination of the first ten weeks following his injury.

Under the rule announced in Russell v. Indemnity Transportation Company, supra, it is not necessary that one seeking rescission for fraud prove any certain amount of pecuniary loss or damage. Associate Justice Pierson states in the opinion in the Russell case that "some pecuniary injury" must be shown. He quotes with approval from Mr. Pomeroy as follows: "If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable."

Plaintiff in error, as evidenced by the testimony of its adjuster, Dr. Mann, the letter of instructions from its general manager Westerlage to Dr. Mann, and the report of Dr. Good, who examined McGee at its request, if not expressly, has in effect admitted that McGee was totally incapacitated for the period of ten weeks for which he was paid. Dr. Good's report, which was in Dr. Mann's possession when the settlement was made, clearly shows that following that total incapacity there was a period of partial incapacity. This report was made April 24, 1933, twelve weeks after the accident in which McGee was injured. It states that "At present, he is able to go around and do light work." It concludes with these two paragraphs:

"Prognosis: Severe strains of this kind usually recover sufficiently to retun to work in from six to ten weeks. Under proper management, I believe he can return to work within two or three weeks.

"Treatment: I advise that he procure and wear a sacroiliac belt for five or six months. Proper care frequently avoids a recurrence of the injury."

Dr. Mann testified that when the settlement was made on May 31, 1933, McGee's general appearance did not indicate

that he was a well man and that at the time of the trial in August, 1933, "He didn't look particularly good." Dr. McGee, the father of defendant in error, is not shown to have any financial interest in the result of the suit. His testimony, which was neither contradicted nor discredited, but was corroborated by Dr. Mann's testimony and Dr. Good's report, proves at least a partial incapacity resulting from the injury, an inability to perform any manual labor which continued to the time of the trial. It is apparent from the undisputed evidence of partial incapacity for three or four months after the termination of the ten weeks of total incapacity that the defendant in error by reason of the representation including the settlement suffered substantial pecuniary loss or damage.

All assignments of error in the application for the writ have been carefully considered and in our opinion none of them presents reversible error. The judgment of the district court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court April 19, 1939.

Rehearing overruled May 31, 1939.