## LIBERTY MUT. INS. CO. v. WRIGHT.

### No. 14772.

Court of Civil Appeals of Texas.
Fort Worth.

June 28, 1946.

Rehearing Denied Sept. 13, 1946.

Cantey, Hanger, McMahon, McKnight & Johnson and James C. Wilson, Jr., all of Fort Worth, for appellant.

Freeman & Wardlaw and M. Hendricks Brown, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellee suffered a hernia, and filed claim for workmen's compensation with the Industrial Accident Board. On March 20, 1945, the Board entered an order directing appellee to submit to a surgical operation, and appellant tendered the operation. Appellee advised the Board that he would not consent to an operation, whereupon the Board, by letter dated April 12th, directed appellee to present himself to a named physician for an examination. After receiving letters from three physicians who had examined appellee, the Board on June 12th set aside the order of March 20th, and entered an order which, after setting aside the order of March 20th, reads as follows:

"On this 12th day of June, 1945, after due notice to all parties, came on to be considered by Industrial Accident Board the claim for compensation by Arthur L. Wright against Liberty Mutual Insurance Company, and Board finds and orders:

"On October 25th, 1944, Armour and Company was a subscriber to Employers' Liability Act with insurance carried by Liberty Mutual Insurance Company. In its employ was Arthur L. Wright whose average weekly wage was $45.05, and compensation rate $20.00 per week under the Act. On said date Arthur L. Wright suffered injury in course of employment resulting in total incapacity for not longer than 52 weeks.

"Liberty Mutual Insurance Company is ordered to pay Arthur L. Wright $20.00 per week for an indefinite period in the future not exceeding 52 consecutive weeks from October 25th, 1944, unless changed by subsequent award of the Board.

"An attorneys' fee of 15%, on the unpaid portion of this award, is ordered paid out

of installment payments by Liberty Mutual Insurance Company to W. O. Freeman of Fort Worth, Texas, attorney for Arthur L. Wright. Previous payments of compensation, if any, and attorneys' fee shall be deducted from this award."

Appellee appealed from said order of June 12th by filing the present suit in the district court. The case alleged by appellee is that the hernia has caused total and permanent disability, and that he is in such condition as to render it more than ordinarily unsafe for him to submit to an operation. The verdict of the jury supports this theory of recovery, and there is no complaint here as to the sufficiency of the evidence to support the verdict. Appellant presents twenty-eight points of error, but all of them are based upon the single proposition that appellee is limited to a recovery of 52 weeks compensation by reason of his refusal to submit to an operation. It is appellant's contention that the Industrial Accident Board alone had authority to pass upon the question whether it was more than ordinarily unsafe for appellee to undergo the operation, and that, the Board having found against appellee on this question, the district court had no authority on the trial de novo to go into the question. Appellant declares in its brief:

"Defendant contends that the Board alone is empowered to determine that question, and that when the case reached the District Court, the rights of the plaintiff and defendant had been determined by the previous action of the Board, that is, that plaintiff by refusing the operation ordered by the Board and tendered by the insurance company limited his ultimate recovery to 52 weeks, subject, of course, to proper findings by the jury. The defendant by its willingness to have the plaintiff operated upon and to abide by the award of the Board of March 20th, assumed the risks set out in Art. 8306, Sec. 12b, for if the operation was made and plaintiff did not effect a recovery, he could sue as though for a general injury and recover for that in addition to the cost of operation, and at the same time the company by tendering the operation as ordered by the Board limited plaintiff to a recovery of 52 weeks in the event plaintiff refused to be operated upon."

Appellant and appellee both say that so far as they have been able to determine, the exact question thus presented has not been decided by the appellate courts of Texas. We have found no decision precisely in point.

Article 8306, Section 12b, dealing with hernia claims, provides in part that the insurer shall provide an operation where liability for compensation exists, and that in case the employee refuses to submit to an operation the Board shall order a medical examination. The examining physician or physicians shall make a report, signed and sworn to, setting forth the facts developed at the examination and giving the physician's opinion as to the advisability or non-advisability of an operation. "If it be shown to the board by such examination and such report thereof and the expert opinions thereon that the employe has any chronic disease or is otherwise in such physical condition as to render it more than ordinarily unsafe to submit to such operation he shall, if unwilling to submit to the operation, be entitled to compensation for incapacity under the general provisions of this law. If the examination and the written report thereof and the expert opinions thereon then on file before the board do not show to the board the existence of disease or other physical condition rendering the operation more than ordinarily unsafe and the board shall unanimously so find and so reduce its findings to writing and file the same in the case and furnish the employe and the association with a copy of it findings, then if the employe with the knowledge of the result of such examination, such report, such opinions and such findings, thereafter refuses to submit within a reasonable time, which time shall be fixed in the findings of the board, to such operation, he shall be entitled to compensation for incapacity under the general provisions of this law for a period not exceeding one year."

In his report to the Board, the physician selected by the Board to examine appellee concludes his report by saying, "I would not suggest that surgical repair be attempted on this man. In the event that surgical repair were attempted, and enough suitable tissue were found to close the

deficiency, the chances of recurrence would probably be greater than 50%."

We observe first of all, although the matter is not mentioned in the briefs of either of the parties, that there is no express finding in the Board's order of June 12th negativing the existence of disease or other physical condition rendering the operation more than ordinarily unsafe. Article 8306, Sec. 12b, above quoted, provides that if the written report of the examining physician does not show the existence of disease or other condition rendering the operation more than ordinarily unsafe, and if the Board "shall unanimously so find and so reduce its findings to writing," then if the employee with knowledge of such examination, report, opinions and findings, thereafter refuses to submit to an operation within a reasonable time, he shall be entitled to compensation for incapacity under the general provisions of the law for a period not exceeding one year. The Board's order of June 12th simply recites that the claim came on to be heard, that the employer was a subscriber, that appellant carried the insurance, that appellee was in the employer's employ and that his average weekly wage was $45.05, that the compensation rate was $20 per week, that on the named date appellee suffered injury in course of employment "resulting in total incapacity for not longer than 52 weeks," and orders appellant to pay appellee $20 per week for an indefinite period in the future not exceeding 52 consecutive weeks from the date of the accident unless changed by subsequent award of the Board.

█ It may seriously be doubted if the record made by the Board shows that it undertook to or did decide whether it was more than ordinarily unsafe for appellee to submit to the operation. In the absence of such a finding by the Board it would appear that there is lacking in the order of the Board the basis upon which appellant rests its theory, to-wit, that the Board found that it would be safe to submit to the operation, that the Board had exclusive authority to pass upon that question, and that the question could not be litigated in the trial de novo in the district court. The

statute appears to prescribe a strict course which must be followed before the employee can be limited to 52 weeks compensation. In cases too numerous to cite our courts have held that the statute is to be given a liberal, and not a strict, construction.

█ But if we assume that the record is sufficient to imply a finding by the Board that it was not more than ordinarily unsafe for appellee to submit to the operation, and a final award of 52 weeks compensation based on that finding, we find nothing in either the statute or the decisions of our courts which would preclude the employee from trying the issue anew in the trial de novo in the district court. We have found no instance in which a portion of the final award of the Board was left in force after appeal was taken to the courts, and another portion of the same final award of the Board was left subject to adjudication by the court in the de novo trial. We have found no instance in which a final award of the Board or any part of a final award of the Board was declared to be binding on the court or the parties in the trial de novo, except in the sense that the entering of a final award by the Board is a condition prerequisite to exercise of jurisdiction by the court. The cases holding that an interlocutory order of the Board ordering an operation is not appealable have no application to the question before us. Nor can we find any good reason why the court might not hear and determine the question of whether or not it would be safe for the employee to submit to an operation where he refuses to do so in the belief that it would be unsafe for him to do so. If he believes that it would be unsafe to submit to an operation, and if the Board finds against him and limits the recovery of compensation to 52 weeks because of his refusal to submit to the operation, it cannot be said that there is any lack of finality in the Board's award. And to deny the employee the right of appeal to the courts from a finding of the Board which, under the facts of the present case, reduces the amount of compensation from 401 to 52 weeks, is to leave the employee without any relief by way of appeal to the courts from the final order of an

administrative agency. To state the facts of the situation is, we believe, to demonstrate convincingly the error in appellant's basic theory of the case.

Appellant has seized upon expressions from certain opinions to the effect that the employee is limited to 52 weeks compensation where the Board finds that it is not more than ordinarily unsafe to submit to the operation, and where the employee nevertheless refuses to submit to the operation. In none of those cases did the court have before it for decision the question which we have here, and there is nothing in any of those cases to indicate that the court was undertaking to declare the rule applicable in a case like the one now on appeal. The following is a list of all the cases cited by appellant: Federal Underwriters Exchange v. Bobbitt, Tex.Civ.App., 125 S.W.2d 1084; Federal Underwriters Exchange v. Thompson, Tex.Civ.App., 137 S.W.2d 106, id. 136 Tex. 194, 148 S.W.2d 1092; National Mutual Casualty Co. v. Lowery, 136 Tex. 188, 148 S.W.2d 1089; Tally v. Texas Employers' Ins. Ass'n, 129 Tex. 134, 102 S.W.2d 180; Towns v. Traders & General Ins. Co., Tex.Civ.App., 107 S.W.2d 460.

From the opinion in Zurich General Acc. & Liability Ins. Co. v. Rodgers, 128 Tex. 313, 97 S.W.2d 674, and from the decisions there cited, it is plain that any person brought under the jurisdiction of the Industrial Accident Board, who is not willing to abide by the Board's final decision, may take the entire case to a court of competent jurisdiction. Such court is vested with full power to determine the issues and the rights of all parties involved, and to try the case just as if the suit had been filed originally in such court. The Board loses jurisdiction of the claim. Its award is vacated, and is no longer in force.

The judgment of the trial court is affirmed.