### HARTFORD ACCIDENT & INDEMNITY CO. v. PERRY.
#### No. 14174.

Court of Civil Appeals of Texas. Dallas.
March 24, 1950.

Robertson, Jackson, Payne, Lancaster & Walker, and James F. McCarthy, all of Dallas, for appellant.

J. E. McLemore, Jr., and Milton K. Norton, both of Dallas, for appellee.

CRAMER, Justice.

This cause was filed by appellee to set aside an Industrial Accident Board-approved compromise settlement agreement made under the Workmen's Compensation Act. Vernon's Ann.Civ.St. art. 8306 et seq. Upon trial before a jury, a verdict on special issues favorable to appellee was returned and judgment thereon entered setting aside the compromise settlement agreement, from which judgment this appeal has been duly perfected.

Appellant briefs four points of error, in substance: (1) Error in overruling its motion for instructed verdict; (2) in overruling its motion for verdict non obstante veredicto; (3) in refusing to grant a new trial because the jury answers to issues 2 to 9, inclusive, were against the overwhelming weight and preponderance of the evidence; and (4) in overruling and not sustaining its objections to special issues 6 to 9, inclusive, in the court's charge. All points will be discussed together.

Appellee was an employee of Safeway Stores, Inc., a subscriber under the Workmen's Compensation Act, with appellant as insurer. On Monday morning, September 27, 1948, appellee reported to his store manager that on the previous Saturday, while he was unloading merchandise, he had a pain in his lower right side and something was wrong with him. The manager sent him to a doctor who found he had a hernia, advised an operation, and told him to see a Mr. Glass, claim agent for appellant. Appellee, on the next day (Tuesday), went to the claim agent's office and was told by the agent that the doctor had called him and told him that he (Perry) had a hernia. As related by appellee, Glass (after taking appellee's statement) told him that "They paid off in one lump sum so it would be better for the one injured. He said they would pay— allowed $100 doctor bill and $100 for the

hospital bill, and allowed, too, for the time being off,"—which he said would be from six to eight weeks. In this statement it was stated that Perry received $50 per week, worked 10 hours per day, five days a week; that on Saturday night, September 25, 1948, between 5:00 and 7:00 P. M., while helping unload a grocery truck he lifted a good bit of merchandise, but felt no definite pain at any one time; did not know what he lifted that caused the injury; did not know that he had been injured until he reached home and started to take a bath; that before he reached home his side was hurting some, and while taking a bath, noticed the swelling and the area pained when he touched it; said there was not a lot of pain except when stooping over or walking; that he told Safeway employee Alfred Miller, but not the truck driver, about his side hurting; that he went to work the next morning, worked a little, told the store manager about his side and that he was going to the doctor; that he went to see Dr. Ross who informed him that he had a hernia on his right side; that he had never had a hernia or rupture before, had never been operated on before; he had a physical examination when he went to work for Safeway, having been examined by Dr. Ross. Stated that he had just a little pain in his right side Saturday night; did not go any place; went to bed; went visiting Sunday afternoon,—his side not bothering him much, just a little hurting in his side; he did not try to do anything Sunday.

The compromise settlement agreement is on the Board's standard printed form and, among other statements, in appropriate spaces therefor, recites: "Issues: Liability. Whereas, the nature, extent and duration of said injury is uncertain and indefinite or incapable of being satisfactorily established, as is made apparent from the following: Claimant contends that he sustained an accidental injury during the course of his employment resulting in a hernia, whereas, the insurer contends that the hernia did not appear immediately and suddenly following the injury, that it was not accompanied by pain, and that it was not sustained during the course of

the claimant's employment. Liability herein is in issue but it is settled by this compromise settlement agreement * * *."

The affidavit attached was as follows: "I am Mr. C. W. Perry, age 26, of 1206 Iowa Street, Dallas, Texas, employed by Safeway Stores, Inc. as a food clerk. On September 25, 1948, while unloading a truck of merchandise, I sustained an accidental injury resulting in a hernia. I do not know exactly what I lifted to cause the hernia, as I did not know that I had hurt myself until after I had left the store. The injury was not accompanied by any pain at the time that I must have sustained the injury. I have been examined by a doctor and he advised me that I had a hernia. I have this date entered into a compromise settlement agreement with my employer's compensation insurance carrier for $400.00 which amount is satisfactory to me."

Later, after the Industrial Accident Board had approved the settlement, appellee Perry on October 5, 1948, received the $400 provided for in the agreement.

On the trial, the jury's answers to special issues were favorable to appellee, and the judgment entered in his favor is here appealed from.

Appellee's own testimony most favorable to his action to set aside the settlement for fraud, was that given in answer to questions as to what he was entitled to receive, to the effect that the claim agent told him $400 was all he was entitled to. On questions by his own attorney, he testified:

"Q. *Did Mr. Glass tell you on that occasion that he was familiar with the law— that he knew it? A. No, sir; he did not.*

"Q. *Well, did he tell you—You said awhile ago that he told you the law permitted the $400.00. A. He said that was all I was entitled to.*

Q. *Under the law? Did you know at that time Mr. Glass had a license to practice law in the State of Texas? A. No, sir; I did not.*

"Q. Did you know what kind of experience he had had in Workmen's Compensation Law? A. No, sir; I did not.

"Q. Did you rely on the statements he made to you at that time? A. I did." (Emphasis ours.)

Appellee testified that he did not know what he was entitled to under the Compensation Act; was never advised what the law allowed him until he saw his lawyer; that he relied on the claim agent's statement that he was entitled to six or eight weeks. After the operation he paid the doctor bill of $100 and the hospital bill amounting to $68 or $70 out of the $400; had used the other part for living expenses and was unable to tender any portion of it back to the insurance company. In his deposition he testified as follows:

"Q. *Did he tell you that that was all they were willing to pay you without your filing a lawsuit? A. He only said that's all they paid for a hernia.*

"Q. *Did he tell you what the law allowed for a hernia? A. No, he didn't,*" (Emphasis ours.)

"Q. On that day when he took this compromise settlement agreement he also took a statement didn't he? A. Yes, sir, he did.

"Q. Did you sign that statement? A. Yes, sir.

"Q. Did you read that statement before you signed it? A. Yes, sir, I did.

"Q. Was what was in that statement what you had told Mr. Glass when he was out there that day? A. Yes, I told him that."

On cross-examination, with reference to his deposition, he testified:

"(Reading) 'Did you sign that statement?' And what did you say? A. I said, 'Yes, sir.'

"Q. (Reading) 'Did you read that statement before you signed it?' What did you say? A. I said, 'I read part of it.'

"Q. No, sir: what did you say? A. I said, 'Yes, sir; I did.'

"Q. And I asked you 'Was what was in that statement what you had told Mr. Glass when he was out there that day?' And what did you say?' A. 'Yes.'

"Q. You said, 'Yes, I told him that.' That is what you told him, wasn't it? You were under oath when you gave this deposition, weren't you? A. That's right.

"Q. Did you read the statement over, or did you? A. I said I read part of the statement over but I didn't read over all of it because I thought it was what I gave him, Mr. Glass.

"Q. That is not what you said in this deposition.

"Mr. McLemore: The deposition speaks for itself.

"Q. (By Mr. Miller): You said—Well, now, is this true? A. Yes, sir; that is true.

"Q. That is true what is in the statement; it is on page 16 of the deposition. A. Yes, sir."

Appellant relies on the case of Traders & General Ins. Co. v. Towns, Tex.Civ.App., 130 S.W.2d 445. There the claim agent stated specifically what the injured man was entitled to recover under the law for a hernia. Such is not the burden of the testimony here. In Safety Casualty Co. v. McGee, 133 Tex. 233, 127 S.W.2d 176, 121 A.L.R. 1263, the Commission of Appeals approved the setting aside of a compromise settlement, Justice Smedley holding that where one party is well versed in the law and the other is not, a representation as to what the law is or what the law allows will constitute fraud; but in this case there was no representation as to what the law allowed. Here the appellee himself stated that the claim agent did not tell him what the law allowed for a hernia, but simply that $400 is all they would pay him for his hernia, which of course meant under the facts and circumstances related in his affidavit. We have given the case careful consideration and are of the opinion that there is no evidence of probative value sufficient to support the verdict and judgment.

The cause is therefore reversed and here rendered for the appellant.