William MARLOW et ux., Appellants,

v.

Cynthia MEDLIN, Appellee.

No. 5775.

Court of Civil Appeals of Texas, Waco.

Nov. 17, 1977.

Herbert E. Evans, Austin, for appellants.

J. Terry Weeks, Levbarg, Weeks & Chapman, Austin, for appellee.

HALL, Justice.

This is a common law fraud action for actual and exemplary damages brought by Cynthia Medlin against William Marlow and wife Elli Marlow as partners. The gist of plaintiff's suit was that her landlords were defendants' vendees under a contract of sale of the premises she was renting, and that she was induced by defendants' false representations to pay defendants rent money she was withholding from her landlords as an offset against a debt they owed to her. Defendants answered with a general denial, several special pleas, and a counterclaim for unpaid rent. After a hearing without a jury, judgment was rendered awarding plaintiff actual and exemplary damages, and denying defendants recovery on their counterclaim. Defendants appeal. We affirm the awards of damages on plaintiff's action, but we reform the judgment to allow defendants recovery on their counterclaim.

On July 3, 1973, defendants sold a duplex-type house and lot located in the City of Austin, Texas, to Tom Kosowski and Mike Vogel under a written contract of purchase and sale. The terms of the contract called for a total price of $41,600.00, a down payment of $4,000.00, payment of the balance in monthly installments of $400.00, and execution by defendants of a general warranty deed to the purchasers upon payment of the entire purchase price. The monthly payments were payable to defendants at Silver Lake, Indiana. Although the contract provided that if the purchasers breached its terms defendants would be authorized to terminate the contract and retain all money paid by the purchasers as rental and liquidated damages, nothing was stated in it concerning the parties' rights to rent paid by tenants of the property. However, the language of the whole instrument (which we need not set forth) clearly evidenced an intention that the purchasers should have possession of the premises. On the day the contract of sale was executed, Kosowski and Vogel borrowed $2,700.00 from plaintiff, executed their promissory note to plaintiff for the loan, and used the borrowed money in making the $4,000.00 down payment to defendants. The note from Kosowski and Vogel to plaintiff called for full repayment of the loan by January 1, 1974, with 9% interest.

Within a few days after execution of the contract of sale and the note in July, 1973, plaintiff, who was a student at the University of Texas at Austin, leased the house from Kosowski and Vogel at a rental of $175.00 per month. She also managed the premises in an informal fashion, collected rent from other tenants, and deposited it with her own rent in Kosowski's and Vogel's bank account. Kosowski and Vogel never made any payment of either interest

or principal on plaintiff's note, and in August, 1974, plaintiff determined to withhold her rent from them. She did so for the months of September, October, and November, 1974. By this time, Kosowski and Vogel were in default on their payments to defendants under the contract of sale.

Plaintiff testified that defendant William Marlow telephoned her twice in the month of November, 1974. Her account of their conversation is as follows:

"[On the first call] Mr. Marlow wanted to know what happened, what had happened to Mr. Vogel and Mr. Kosowski and why he hadn't been receiving the full amount of house payments from them. I speculated as to why I thought that he was not receiving that money, and one of the things I told him was that I was withholding my rent from them because they had not attempted to repay my loan. And he became very angry with me and told me I had no right to do that; that it wasn't my money, that it wasn't—well, it wasn't my money to keep. That it was his money and I was stealing from him if I was withholding the rent, and I told him I did not believe that was so because I was not renting from him, and I was renting from [Kosowski and Vogel]. He was very insulted that I was doing it to him, and I told him I was not doing it to him but I was doing it to [Kosowski and Vogel]. He became very angry with me and told me—like I said, he told me I had no right to do that and he said I was stealing from him and he was going to call his attorney and find out what he could do about it, and then he said he would call me back. In a few days to two weeks, I am not sure how long it was, he called me back and he told me that he had checked with his attorney and I had no right to that money; that I was stealing it and that he would call the Sheriff, and I had—he wanted, he wanted me to send the money to him instead of withholding it from Vogel and Kosowski. He said that if I didn't send it that he could get me in trouble, that he would call the Sheriff. After that last conversation, I sent him the money. If it were not for those conversations I would not have sent him the money. I sent it then because I was afraid not to."

Plaintiff's brother resided with her in the leased premises. He testified, "Cynthia informed me of the first conversation. She was very upset and scared over it, and she asked me to listen in on the second conversation. I did." He gave this account of Mr. Marlow's attitude and statements:

"Mr. Marlow was very upset, very indignant. Insulted my sister profusely and insulted me, my sister, and the other people in the house in general. Was very flagrant and inflammatory toward Michael Vogel and Thomas Kosowski and proceeded to tell Cynthia, my sister, that if she did not send him the money that she had been withholding for rent against Mike Vogel and Thomas Kosowski, that if she did not send the money that he would have the Sheriff come out and arrest her, that he had his lawyer to check into the legality of it, and that she was stealing his money. After the conversation was completed Cynthia was very upset, very scared. She was in tears, and being very scared she went ahead and sent the money."

On December 2nd, after the conversations, plaintiff mailed defendants $476.44, stating in her letter of transmittal that this sum was the rent for the months of September, October, and November, 1974, at the rate of $175.00 per month, less $48.56 paid by her for a water bill which Kosowski and Vogel should have paid.

Mr. Marlow denied that he told plaintiff to pay the rent she was withholding to him.

On December 27, 1974, defendants rescinded the contract of sale, notified Kosowski and Vogel that they had done so, and caused an instrument reflecting those facts to be filed in the deed records of Travis County, Texas.

Plaintiff continued living in the house until March 20, 1975, when she was judicially evicted under a forcible detainer action filed by defendants in the Justice Court of Travis County. During this time she paid only $175.00 for rent. This payment was voluntarily made by her to defendants in January, 1975. She testified that this was a "good-faith gesture" on her part when they were discussing the possibility of her purchase of the property.

The trial court made and filed the following findings of fact and conclusions of law:

### "FINDINGS OF FACT

"1. In December, 1974, Cynthia Medlin was a tenant of Tom Kosowski and Mike Vogel at 3111 Hemphill Park, Austin, Texas. At that time Vogel and Kosowski were owners of 3111 Hemphill Park under a Contract of Sale from the Defendants William and Elli Marlow.

"2. Cynthia Medlin had advanced Kosowski $2,700.00 which was used as part of the down payment for the purchase of 3111 Hemphill Park by Vogel and Kosowski from the Marlows. The Marlows knew that Cynthia Medlin had advanced Kosowski this money for this purpose.

"3. Vogel and Kosowski executed a promissory note to Cynthia Medlin for the money she had loaned them.

"4. Vogel and Kosowski defaulted on their payments to Cynthia Medlin on the promissory note, and Cynthia Medlin withheld her rent payments from Vogel and Kosowski as an offset against the Vogel and Kosowski note.

"5. The Marlows learned that Cynthia Medlin was withholding rent from Vogel and Kosowski. William Marlow told Cynthia Medlin that the rent she was withholding belonged to him since Vogel and Kosowski had also defaulted on their obligation to the Marlows on the Contract of Sale.

"6. William Marlow falsely represented to Cynthia Medlin that she had no right to the money she was holding, that her holding the money was tantamount to theft from the Marlows, that he had consulted a lawyer about the matter and that he could send the Sheriff to get her.

"7. The false statements by William Marlow were intentionally made to Cynthia Medlin for the purpose of getting $476.44 which Cynthia Medlin had withheld from Vogel and Kosowski. Cynthia Medlin believed that she could be arrested as William Marlow had threatened. The false statements by William Marlow were material, and because of her reliance on these material false statements, Cynthia Medlin turned over the $476.44 to the Marlows.

"8. Cynthia Medlin's reasonable and necessary attorney's fees in this cause are $1,500.00."

### "CONCLUSIONS OF LAW

"1. The acts of the Defendants constituted fraud against Cynthia Medlin.

"2. Cynthia Medlin is entitled to $476.44 as actual damages resulting from this fraud and $750.00 as exemplary damages.

"3. Cynthia Medlin is entitled to $200.00 as her reasonable attorney's fee for the securing of the Order of this Court whereby the Defendants were Ordered to appear for oral depositions.

"4. William Marlow had no greater right to the money than Cynthia Medlin."

Judgment was rendered awarding plaintiff $476.44 actual damages and $750.00 exemplary damages on her fraud claim. Defendants were denied any recovery on their counterclaim.

Plaintiff was also awarded $200.00 as reasonable attorney's fees for securing an order requiring defendants to appear for depositions, but this award is not questioned on this appeal.

 Defendants assert that plaintiff did not establish that any representation made by them was false, or that plaintiff suffered injury. We disagree. The pur-

chaser under an executory contract of sale who goes into possession is entitled to all lease or rental money not reserved to the vendor by agreement of the parties. *Robinson v. Smith*, 130 S.W.2d 381, 384 (Tex. Civ.App.—Waco 1939, writ ref.); *Dallas Joint Stock Land Bank v. Lancaster*, 91 S.W.2d 890, 891 (Tex.Civ.App.—Waco 1936, no writ); *F. Groos & Co. v. Chittim*, 100 S.W. 1006, 1012 (Tex.Civ.App.1907, no writ); 35 Tex.Jur.2d 643, Landlord And Tenant, § 138; 58 Tex.Jur.2d 470, Vendor And Purchaser, § 250. This rule applies even if the vendee is in default on the contract, so long as the contract is in force. 35 Tex.Jur.2d 641, Landlord And Tenant, § 137. This is because of the remedies available to the seller who may, upon the purchaser's default, affirm the contract and sue for damages or for specific performance, or rescind the contract.

In our case, Kosowski and Vogel, in possession of the property under the executory contract of sale, were entitled to the rents until the contract was rescinded by defendants on December 27, 1974. If plaintiff had paid the rent in question to Kosowski and Vogel, defendants could not have compelled her to repay it to them. See *Jones v. Hutchinson*, 21 Tex. 370, 376–77 (1858). Defendants' representations to plaintiff that the rent money was "their money" and that they were entitled to receive it were, accordingly, false.

■ Defendants' statement to plaintiff that she had no right to withhold the rent was also false. The tenant is entitled to set off a debt owing to him by the landlord against the landlord's claim for rent. *Walker v. Amberg*, 284 S.W. 334, 335 (Tex. Civ.App.—Austin 1926, no writ); *Harris v. McGuffey*, 185 S.W. 1024 (Tex.Civ.App.— Texarkana 1916, no writ); 35 Tex.Jur.2d 653, Landlord And Tenant, § 145. When plaintiff was induced by defendants to pay the rent to them, she lost the opportunity to offset it against her landlords' debt to her and was thereby damaged in that amount.

■ Defendants contend that the court's findings do not support the award of exem-

plary damages because there were no findings that defendants intended to deceive, defraud or injure plaintiff; and that, in any event, the evidence does not support such findings. These contentions are overruled.

The evidence that defendants were abusive and insulting toward plaintiff, accused her of stealing, and threatened her with arrest when the misrepresentations were made supports an implied finding that defendants acted willfully and maliciously. A finding on this question was not requested by plaintiff or defendants. Under our record, which contains express findings on other elements of plaintiff's fraud action, the omitted, unrequested finding that defendants acted with malice is "supplied by presumption in support of the judgment." Rule 299, Vernon's Tex.Rules Civ.Proc.; *Bednarz v. State*, 142 Tex. 138, 176 S.W.2d 562, 563 (1944). In turn, this finding supports the award of exemplary damages. 17 Tex.Jur.2d 238, Damages, § 173.

■ Defendants urge that their representations to plaintiff were simply statements as to matters of law, and therefore will not support an action for fraud. We reject this argument. The general rule is that fraud cannot be predicated upon misrepresentations as to matters of law. The reason usually given for the rule is that everyone is presumed to know the law, and hence has no right to rely upon such representations made to him by another, and that the representations are to be treated as mere statements of opinion and not of fact. "But it is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood." *Safety Casualty Co. v. McGee*, 133 Tex. 233, 127 S.W.2d 176, 178 (Tex.Comm.App.1939, opinion adopted). The facts of our case fall within this latter rule. The record shows that defendants had been engaged for many years in the business of buying and selling and leasing properties. Defendants knew that plaintiff was a college student and a tenant of the

premises under Kosowski and Vogel. Plaintiff knew that Kosowski and Vogel were delinquent on their payments to defendants under the contract of purchase. Defendants' misrepresentations to plaintiff as to their right to the rent money and their remedy against her if she withheld it from them were made in an overbearing, threatening manner, assertedly after consultation with legal counsel on the subject. The trial court, as trier of the facts, was justified in believing and finding that defendants' statements were intended by them as representations of fact and were so understood by plaintiff.

█ As we have said, plaintiff remained in the house until she was evicted on March 20, 1975. The evidence shows without contradiction that a reasonable rental for the house was $175.00 per month. It also shows without dispute that plaintiff voluntarily paid defendants $175.00 for rent in January, 1975. She testified that this was for the January rent. But plaintiff admitted that she did not pay rent in December, 1974, or in February and March, 1975, to anyone. In their counterclaim, defendants asserted they were entitled to three months' rent—either for the months of December, 1974, and February and March, 1975, or for the months of January, February, and March, 1975. However, as we have already held, Kosowski and Vogel were entitled to the rent until the contract of sale was rescinded by defendants on December 27, 1974. And, until the rescission, plaintiff had the right to set off her rental payments against the debt owed to her by Kosowski and Vogel. Defendants were entitled to the rent from plaintiff for only the months of January, February, and March, 1975. They have received the January rent. Accordingly, the maximum allowable recovery under their counterclaim would be $350.00.

Plaintiff's defense to defendants' counterclaim was the plea of res judicata on the theory that defendants' right to rent was adjudicated in the Justice Court with defendants' forcible detainer action. Without detailing the proof on this question, we hold that it is legally insufficient to support plaintiff's plea.

The trial court's awards of damages to plaintiff on her fraud action were proper. However, defendants should have been allowed a recovery of $350.00 on their counterclaim. The judgment is reformed to provide for this recovery by defendants. Reformed, the judgment is affirmed.

The costs of the trial and this appeal are assessed 75% against defendants and 25% against plaintiff.