**Jane PSARIANOS, et al.**

v.

**Peter Thomas KIKIS.**

**No. 1:95–CV–0090.**

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 25, 1996.

Benton Musslewhite, Houston, TX, Benjamin L. Guelfo, Baton Rouge, LA, Michael B. Cupit, Baton Rouge, LA, Thomas A. Peterson, Peterson Petit & Peterson, Beaumont, TX, for Plaintiffs.

Gilbert I. Low, Orgain, Bell & Tucker, Beaumont, TX, for Defendant.

### MEMORANDUM OPINION

COBB, District Judge.

On February 1, 1984, the M/V THOMAS K sank in the international waters in the Sea of Japan. Lawsuits ensued. *Psarianos, et al. v. Standard Marine Ltd., Inc., et al.*, 728 F.Supp. 438 (E.D.Tex.1989); *Psarianos, et al. v. Standard Marine Ltd., Inc., et al.*, 790 F.Supp. 134 (E.D.Tex.1992) aff'd in *Psarianos, et al. v. Standard Marine Ltd. Inc. et al.*, 12 F.3d 461, 1994 A.M.C. 2081 (5th Cir. 1994); *Psarianos, et al. v. United Kingdom Mutual Steamship Assurance Ass'n (Bermuda), Ltd.*, 851 F.Supp. 264 (E.D.Tex.1994), aff'd in *Psarianos v. United Kingdom Mutual Steamship Assurance Ass'n (Bermuda), Ltd.*, # 94–40439, 56 F.3d 1386 (5th Cir., May 24, 1995) (unpublished). This latest action against Peter T. Kikis and Eagle Transport, Ltd., has been removed from the Texas state court, and remand denied in an unpublished order of May 18, 1995.

In the first case, plaintiffs recovered damages for the wrongful deaths of and injuries to various crew members of the THOMAS K against Eagle Transport (Eagle), and the American Bureau of Shipping (ABS). ABS has settled with all of the plaintiffs. ABS was cast in judgment for negligent inspection of the THOMAS K before its ill-fated final journey. ABS certified the THOMAS K was in class, and upon such certification, United Kingdom Mutual S.S. Assurance Ass'n (Ber-

muda), Ltd. (P & I Club, or Club) issued a protection and indemnity contract.

The P & I Club was brought in as a party defendant, denied that it covered the loss of the ship or damages incurred by crew members, since the vessel was out of class when its policy was issued. After being severed for a separate trial, the trial court ordered arbitration of plaintiffs' claim against the P & I Club. After arbitration in London, the arbitrators held the P & I Club afforded no coverage. This court confirmed the award and its decision was affirmed on appeal.

Next, when the Psarianos plaintiffs sued the U.K. P & I Club directly, the court granted summary judgment for the defendant. The court of Appeals affirmed upon the Psarianos appeal which was stated to be "frivolous," and awarded double costs and attorneys' fees.

Now, the Psarianos plaintiffs have sued Peter T. Kikis individually for $10 million for breach of contract, fraud, and other tortious and mischievous conduct. In 1986, before the first trial, plaintiffs settled with Peter Kikis six days before trial for $300,000. The settlement agreement provided, *inter alia,* that Kikis would attend trial, and:

> "[W]ill exert his best efforts to present Eagle's defense, to plaintiffs' case in its best light so as not to jeopardize Eagle's cause of action, which will still be pending after the March 10, 1986 trial, against Eagle's underwriters/Managers, and;
>
> Liability to plaintiffs on Eagle's part for actual damages for negligence of the ship's Captain is agreed, but it behooves Eagle, through Kikis, despite the settlement with Kikis individually, to defend against unseaworthiness of the vessel for which plaintiffs may claim recoveries and which could also jeopardize Eagle's claim pending against its underwriters/Managers should unseaworthiness prior to commencement of the voyage be found . . :" '

In addition, the settlement agreement stated:

> PTK nevertheless agrees that post-judgment (in the event plaintiffs obtain a judg-

ment in the aforementioned civil action), he will cooperate in supplying all necessary authorizations, documents and/or statements in his possession, personal depositions and court appearances reasonably required by counsel for plaintiffs in order to further the collection of said judgment at no direct cost to PTK, subject to paragraph 6(D) above.

In return, Kikis would receive his $300,000 from plaintiffs if it was determined U.K. P & I provided coverage, and an additional $200,000 if more than $3,800,000 was recovered from U.K. P & I through Eagle's coverage, and an additional $200,000 plus a possible 12½ percent of recoveries above $4,000,000. The agreement stated it was not a "Mary Carter" agreement, despite the "duck" [1] test.

Plaintiffs claim Kikis did not perform his part of the settlement agreement and the plaintiffs, despite their release of him in his individual capacity, and as alter ego of both Eagle and Standard, are entitled to recover from him personally as if the arbitration hearing in London had been a complete success for Eagle and Standard.

Defendant Kikis has filed a motion for summary judgment based upon the following grounds: statutes of limitations, provisions of the settlement agreement, and *res judicata.* The court is of the opinion that the statutes of limitation bar the following claims made by the plaintiffs. The court is of the opinion that the defendant is entitled to summary judgment on the defendant's asserted grounds, and in the interest of brevity will decide these *seriatim.*

*Civil Conspiracy:* The Texas two-years statute of limitations, Tex.Prac. & Rem.Code. *See also Stevenson v. Koutzarov,* 795 S.W.2d 313, 318–319 (Tex.Civ.App.—Houston [1st Dist.] 1990, writ denied); *Cathey v. First City Bank of Aransas Pass,* 758 S.W.2d 818, 821–22 (Tex.App.—Corpus Christi 1988, writ denied).

*Breach of Duty:* Tex.Prac. & Rem.Code Ann. Section 16.003(a); *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826 (Tex. 1990). *See also Davis v. Aetna Cas. & Sur.*

---

1. "If it walks like a duck, sounds like a duck, and it quacks like a duck, and it smells like a duck, etc." 141 *Congressional Record* (House), 4116, 104th Congress, 1st Session.

*Co.*, 843 S.W.2d 777 (Tex.App.—Texarkana 1992, no writ).

*Alter Ego:* Settlement agreement, March 4, 1984, paragraph 4, which states:

"[A]ny claims brought against Peter T. Kikis derivatively as an officer, owner or agent ... of Eagle Transport, Ltd., ... or individually based upon being the alter ego of Eagle Transport Ltd. ...."

*Fraud based on Kikis' representations: Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983); *Safety Casualty Co. v. McGee,* 133 Tex. 233, 127 S.W.2d 176, 177 (Comm'n of Appeals 1939); *Lewis v. River Oaks Capital Corporation,* 466 S.W.2d 348 (Tex.Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Fina Supply, Inc. v. Abilene National Bank,* 726 S.W.2d 537, 540 (Tex.1987).

*Res Judicata: Soto v. Phillips,* 836 S.W.2d 266 (Tex.App.—San Antonio 1992, writ denied).

■ One additional reason might well presage the same result. The March 4, 1984, agreement could well be interpreted as a "Mary Carter" agreement which, by a somewhat repetitious definition, is:

The term "Mary Carter agreement" has been defined in different ways by various courts and commentators. This Court has yet to definitively define the requisite elements of a Mary Carter agreement—our prior pronouncements utilized different definitions of the term ... (citations omitted). Today we clarify what we mean by the term "Mary Carter agreement." A Mary Carter agreement exists when the settling defendant retains a financial stake in the plaintiff's recovery *and* remains a party at the trial of the case. This definition comports with both the present majority view and the original understanding of the term.

A Mary Carter agreement exists, under our definition, when the plaintiff enters into a settlement agreement with one defendant and goes to trial against the remaining defendants. The settling defendant, who remains a party, guarantees the plaintiff a minimum payment, which may be offset in whole or in part by an excess judgment recovered at trial.

*Elbaor v. Smith,* 845 S.W.2d 240, 247 (Tex. 1992). The Texas Supreme Court declared such contracts "void as violation of sound public policy." Bound by *Erie*[2], this diversity case is governed by Texas law. The rule was given prospective application to all cases brought after December 1992, or at that time "in the judicial pipeline." This suit was either brought after 1992, or if it dates back to the 1984 settlement agreement, it was in that pipeline. If the contract is void, this court will not enforce it nor permit damages for its breach.

■ In effect, the agreement says that if Kikis can deliver a judgment against his own insurer, the P & I Club, he can recover not only his $300,000, but up to 12½ percent of recoveries of over $4,000,000. Texas law does not permit this: *see State Farm Fire and Casualty Co. v. Gandy,* 925 S.W.2d 696 (Tex.1996), and *American Eagle Insurance Co. v. Nettleton,* 932 S.W.2d 169 (Tex.Ct. App.—El Paso 1996).

As a final matter, in a general discussion, plaintiffs suggest that since the judge of this court has dealt with Psarianos so long and in its many guises and facets, the better course might be a voluntary recusal. However, no motion has been filed for this judge to recuse himself. This judge has a long background in this dispute and declines the invitation to visit this burden on any other judge in this district, nor will the case be transferred *sua sponte,* the United States District Court for the Southern District of New York, where Kikis might have a home court advantage.

Hopefully, this disposition will forever lay at rest the Psarianos litigation, and let it join the hull of the ill-fated *M/V THOMAS K,* and not left to continue to haunt the halls of courthouses of the United States as a modern counterpart to the *FLYING DUTCHMAN.*

The defendant's motion for summary judgment is GRANTED at plaintiffs' cost. All

---

**2.** *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct.   817, 82 L.Ed. 1188 (1938).

other relief sought herein, and not specifically granted, is DENIED.