**GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORP., Ltd., Appellant,**

v.

**Delvia B. MARKER, Appellee.**

No. 13048.

Court of Civil Appeals of Texas.

Galveston.

Feb. 7, 1957.

Rehearing Denied Feb. 28, 1957.

Chilton Bryan and E. H. Patton, Jr., Houston, for appellant.

Mandell & Wright and Ben N. Ramey, Houston, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted by appellee in the District Court of Harris County to set aside a compromise settlement agreement of a claim arising under the Workmen's Compensation Act of the State of Texas, Vernon's Ann.Civ.St. art. 8306 et seq. Appellee, in addition to alleging facts sufficient to establish a claim under such statute, also alleged that his execution of the compro-

mise settlement agreement had been induced by false representations of fact made by appellant's claim adjuster, one B. W. Gregory, which representations were believed and relied upon by appellee, and but for which he would not have executed the agreement. With issue joined upon such allegations, the cause was tried before and submitted to a jury upon special issues of fact, in response to which the jury found that three representations, each false in fact, had been made to appellee by appellant's claim adjuster; that appellee believed in and relied upon such false representations, and would not have executed the settlement agreement if such representations had not been made. The jury also found that appellee had sustained an accidental injury, as a result of which he suffered temporary total disability for one year following such accident and a subsequent permanent partial disability of 20%. The compensation for these periods, plus medical and hospital bills, amounts to a sum larger than that paid to him by appellant under the settlement agreement. Upon such verdict the trial court rendered judgment setting aside the compromise settlement agreement, and ordered that appellee's claim be reinstated upon the docket of the Industrial Accident Board for determination on its merits.

On this appeal appellant does not attack the jury findings relating to appellee's claim for compensation under the Workmen's Compensation Act. Appellant presents thirteen points of error, all of which are directed to those jury findings which support the judgment of the trial court setting aside the compromise settlement agreement.

The false representations found by the jury to have been made by B. W. Gregory, and to have been believed and relied upon by appellee are: (1) that Gregory represented to appellee as a fact that the largest amount of compensation to which he was entitled under the Workmen's Compensation Act was $1,500; (2) that Gregory represented to appellee as a fact that his disability following upon his operation would probably not be permanent, and (3) that Gregory represented to appellee as a fact that appellant would not pay his hospital and doctor's bills unless he executed the compromise settlement agreement. Appellant's points of error, 1 to 4, inclusive, assert that the verdict of the jury fails as a matter of law to establish actionable fraud on the part of appellant, first, because representations (1) and (3) above, at most, constitute representations regarding a matter of law and cannot constitute remediable fraud; and second, because all of the representations amount, at most, to a mere expression of opinion which, in order to constitute actionable fraud, must be supported by findings of bad faith and findings negativing the presumption that the representations were honestly made, neither of which findings were requested of, nor found by, the jury. We overrule Points 1 to 4, inclusive.

The record reflects that appellee injured his back while undertaking to move an electric refrigerator into the home of a purchaser from the furniture company by which appellee was employed. The employer's company physician, to whom he was sent, referred appellee to Dr. Alexander Brodsky, a specialist in Orthopedic surgery. When back braces and corsets failed to relieve appellee's pain, a myelographic study was made, which disclosed, according to Dr. Brodsky's diagnosis, a ruptured intervertebral disc. Upon Dr. Brodsky's recommendation an operation was performed on August 23, 1952, during which two herniations at the lowest two joint spaces of the back were excised and a fusion of the sacrum and lowest joints of the back was done.

Appellant, having been notified of appellee's injury, which occurred on July 5, 1952, had commenced weekly compensation payments to appellee. The record discloses that on August 20 Dr. Brodsky mailed to appellant a report of the myelogram which had been performed, wherein he expressed the opinion that appellee would be left after surgery with a permanent partial disability

of fifteen to twenty-five per cent. During the period while appellee was hospitalized awaiting surgery, he was visited at least five times by appellant's claim adjuster Gregory for the purpose of negotiating a settlement of appellee's claim. It was during such visits that the asserted false representations were claimed to have been made. The compromise settlement agreement was executed by appellee on August 25, 1952, and duly approved by the Industrial Accident Board. There is evidence in the record that during such period of hospitalization, and during the visits by Gregory, appellee was suffering pain from his back injury. There is further evidence that he was without funds with which to pay for medical and hospital expenses independently of the compensation insurance.

Assuming, as we must for the purposes of this discussion, that the representations, as found by the jury, were in fact made by Gregory and relied upon by appellee, there appears to be ample authoritative support for the judgment entered by the trial court. The case of Safety Casualty Company v. McGee, 133 Tex. 233, 127 S.W.2d 176, 178, 127 A.L.R. 1263, by the Commission of Appeals of Texas, opinion adopted by the Supreme Court, was one wherein the Workmen's Compensation claimant was found by the jury to have executed the compromise settlement agreement, therein sought to be set aside, in reliance upon false representations made to him by the insurer's company doctor and claim adjuster as to the maximum amount to which he would be entitled for his injury. There, as here, the contention was made that the representation, being one of law, could not form the basis of actionable fraud. The court, after acknowledging the general rule that a misrepresentation of law cannot form the basis of actionable fraud, exhaustively discusses the exceptions to such general rule. In such discussion the following language is employed:

" 'The same is true where one who himself knows the law deceives another by misrepresenting the law to him, or knowing him to be ignorant of it, takes advantage of him through such ignorance, or where the person to whom the representations are made relies upon the supposed superior knowledge and experience of the other party and on his statement that it is unnecessary or inadvisable for him to consult a lawyer'. 12 R.C.L. p. 296, Sec. 60."

In Garsee v. Indemnity Insurance Co. of North America, Tex.Civ.App., 47 S.W.2d 654, 656, wherein a similar contention was made, the court says: "But it is equally well settled that misrepresentations involving a point of law will be held actionable misrepresentations of fact if it appears that they were so intended and understood."

It seems to be equally well settled that bad faith is not necessary in order to constitute misrepresentations, although mere expressions of opinion, as actionable fraud. In Duncan v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 105 S.W.2d 403, 405, relief from a compromise settlement agreement executed by a compensation claimant was sought upon the ground that false representations relative to the duration of the claimant's disability had been made. Upon the question of good faith, or lack thereof, on the part of the person making such misrepresentations, the court says:

"The question of the good faith of the physician and agent in making the statements to plaintiff that she would be well and able to return to her job by April 16th, is not material to the case. Since the jury found that those statements were 'untrue,' it does not matter whether the persons making them knew them to be untrue at the time made, for the fact that the statements were not intentionally false would not affect the right of plaintiff to have the release set aside, if she was in fact misled by the statements. Tex.Jur. p. 42 et seq., §§ 22, 23, 24; 36 Tex.Jur. p. 809, § 12; Culbertson v. Blanchard, 79 Tex. 486, 492, 15 S.W. 700."

Speaking further upon the question of opinion as a basis for actionable fraud, the court says:

"There exists the general rule that if a representation is made as to a matter that rests merely in the judgment of the person making it, and the means of procuring information concerning it are equally open to both parties, and no fraud intervenes, the representation is a mere expression of opinion, and would not justify a cancellation of the resulting contract; whereas, if such means are not equally open to both parties, the statement becomes as one of fact, and cancellation will lie. 1 Black on Rescission and Cancellation, § 77; Missouri, K. & T. R. Co. [of Texas] v. Haven, Tex.Civ.App., 200 S.W. 1152, writ refused.

"This rule, however, must be applied, relaxed or flexed, according to the facts and circumstances of each case in which it may be invoked. If the releasor is under a present disability, physical or mental, from any cause; if he is subjected to high pressure from the agents of the releasee, or is subdued by statements, whether of positive past or present facts, or in the form of opinions which, by the manner in which they are pressed upon the releasor, may amount to statements of fact, the releasor may rely upon them without independent investigation, and without, in an action like this, consulting physicians of his own selection. International & G. N. R. Co. v. Shuford, 36 Tex.Civ.App. 251, 81 S.W. 1189 (writ refused) and authorities cited."

■ We are of the opinion that the jury finding that Gregory represented to appellee that his disability would probably not be permanent would not, under the record before us, constitute such fraud as to support the relief granted to appellee. There seems to us to be no circumstance in the relationship between appellee and Gregory which would legally justify reliance by appellee upon such representation. Gregory was shown to be a young man and identified, so far as this record is concerned, only as a claim adjuster. Nothing in the record places him even by inference in possession of superior knowledge relative to a medical prognosis of appellee's disability.

The means of procuring information concerning future disability appear to us to be more available to appellee than to Gregory. The jury found that at the time of entering into the compromise settlement agreement appellee had been advised as to Dr. Brodsky's opinion as to his probable future disability. Dr. Brodsky was appellee's employee, unconnected with appellant. If the judgment appealed from rested solely upon the jury finding with respect to this representation, we would hold that the representation fell within the general rule relative to expressions of opinion, and does not constitute actionable fraud.

■ Under a literal construction of the issue as submitted to the jury, we also entertain doubt that the finding that Gregory represented that appellant would not pay appellee's hospital bills unless he executed the compromise settlement agreement would constitute actionable fraud. As worded the issue does not necessarily incorporate the idea that the appellant was not legally liable for or obligated to pay hospital and doctor bills. The language employed is equally consonant with the thought that Gregory's representation constituted a threat that appellant would evade or undertake to evade its legal obligation unless appellee executed the agreement. Viewed in that light, the representation while it might constitute duress would not constitute fraud; however, an examination of the trial pleadings of the litigants and of the appellate briefs presented to this Court makes it apparent to us that the litigants treated the issue as though it expressly incorporated the thought that Gregory's representation was one of lack of legal liability on the part of appellant. When so viewed that representation as well as the representation that $1,500 was the largest amount of compensation to which appellee was entitled under the Workmen's Compensation Act constitute actionable fraud. The very nature of Gregory's employment supports the inference of superior knowledge. The circumstances under which the representations were made give rise to the implica-

tion that they were made for the purpose of inducing appellee to execute the settlement agreement. We are of the opinion that these findings by the jury bring the case squarely within the rule of Safety Casualty Company v. McGee, supra, and other authorities heretofore cited.

■ Appellant's Points of Error Nos. 5 to 8, inclusive, and No. 12 assert that there is no evidence to raise the issue of fraudulent representation and the supporting findings of belief and reliance thereon, and, alternatively that the findings of the jury thereon are so contrary to the overwhelming weight and preponderance of the evidence as to be wrong. In view of our stated opinion that the representation by Gregory that appellee's disability would probably not be permanent does not constitute actionable fraud, we exclude from our discussion of these points any consideration of the evidence bearing upon that finding. In so far as they are directed to the other two findings, we overrule such points. Appellee testified unequivocally that Gregory made the representations complained of, and that he believed and relied thereon, and but for such belief and reliance he would not have executed the compromise settlement agreement. His testimony was corroborated by that of his wife, who was in the hospital room with appellee during the visits of Gregory. He was further corroborated by the witness J. W. Tyer, who occupied the adjoining bed in the same room with appellee, and who overheard the negotiations between Gregory and appellee. The only direct evidence in opposition to that mentioned is the testimony of Gregory. The question resolves itself into one of the credibility of the witnesses, which question is solely one for jury determination. We cannot say that the evidence preponderates one way or the other. We cannot see that the fact that appellant actually paid $1,800 rather than $1,500 militates against the evidentiary support for the jury finding complained of. Testimony by appellee, by his wife, and by Tyer is to the effect that

while Gregory represented that $1,500 was the most that appellee was entitled to, he would undertake out of friendship to secure an additional $300.

Appellant's Point 13 is directed to the asserted conflict between the jury finding that at the time of entering into the settlement agreement, appellee had been advised of Dr. Brodsky's opinion as to his probable future disability, and the findings that Gregory represented to appellee that his disability would probably not be permanent, together with the supporting findings of belief and reliance thereon. While we do not see any conflict, our stated opinion relative to the last mentioned findings renders appellant's Point 13 immaterial.

Points 9, 10, and 11 complain of the form of Special Issue No. 21, which was submitted as follows:

"Do you find from a preponderance of the evidence that B. W. Gregory represented to Plaintiff, Delvia B. Marker, as a fact, that Defendant would not pay his hospital and doctor's bills unless he executed the Compromise Settlement Agreement?"

As we understand the complaint it is that the issue as framed is equivocal in that, as appellant contends: "It is impossible to tell whether it represents a finding that Gregory represented to Marker that appellant would never pay the hospital bills, or whether it was a representation that the bills would not be paid until a later date, that is, until after confirming medical reports and appellant's liability for such operation was determined."

■ After carefully examining the evidence offered during the trial of this cause, in the light of the issues joined by the written pleadings of the litigants, we are unable to see wherein the issue as submitted is equivocal, or how it is reasonably susceptible to the construction which appellant would place upon it. We can in no event say that its submission amounts to such a denial of the rights of appellant as would

reasonably calculate to, and probably would, cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.

Judgment affirmed.

CODY, J., not sitting.