ABILENE NATIONAL BANK n/k/a
MBank Abilene, N.A., Appellant,

v.

FINA SUPPLY, INC., Appellee.

No. 11–85–112–CV.

Court of Appeals of Texas,
Eastland.

Feb. 27, 1986.

Rehearing Denied April 3, 1986.

Second Rehearing Denied April 17, 1986.

W. Mike Baggett & Tonya Johannsen, Winstead, McGuire, Sechrest & Minick, Dallas, Pete Baker, Glandon, Erwin, Scarborough, Baker, Choate & Arnot, Abilene, for appellant.

Donald E. Godwin & J. Richard Tubb, Maxwell, Godwin & Carlton, Dallas, Roy B. Longacre, Wagstaff, Harrell, Alvis, Stubbeman, Seamster & Longacre, Abilene, for appellee.

Opinion

RALEIGH BROWN, Justice.

This suit concerns a letter of credit. Abilene National Bank, now known as MBank Abilene, N.A., filed suit seeking a declaratory judgment that it was not liable to fund Letter of Credit No. 1342 in favor of Fina Supply, Inc. because the presentment documents submitted with Fina's draw request did not comply with the terms and conditions of the letter of credit. Subsequently, after Abilene National Bank failed to honor its draft, Fina filed suit against Abilene National Bank for breach of contract; and alternatively, to reform the terms of the letter of credit and collect on the letter as reformed; and also alternatively, to recover damages on the theory of common-law fraud. The two suits were consolidated for trial. Following the jury's verdict, Fina's

motion for judgment authorizing recovery on the theory of common-law fraud was granted, and judgment was entered against Abilene National Bank for $4.5 million as actual damages, $6.5 million as exemplary damages, plus pre-judgment and post-judgment interest, costs of suit, and attorney's fees. Abilene National Bank appeals. We reverse and render.

Fina and Brio Petroleum, Inc. entered into an exchange agreement whereby each would ship crude oil to locations designated by the other, with the mutual intent of exchanging like amounts. Fina required a letter of credit securing payment for any imbalances in Brio's favor. Representatives of Fina and Brio discussed with Kathy Kiser, a vice-president of Abilene National Bank, the need for Brio to secure a letter of credit to support the transactions between Fina and Brio. Based on the discussion, an irrevocable letter of credit dated September 28, 1981, in the amount of $4.5 million was issued by the Bank.

The instrument provided that the funds were available to Fina by its sight draft when:

[A]ccompanied by this original document and:

1. Copy of your commercial invoice covering approximately 124,000 barrels of Giddings type crude oil at a price of $36.25 per barrel, delivered during October, 1981.
2. Copy of Pipeline Statement or Pipeline Receipt evidencing delivery of approximately 124,000 barrels of Giddings type crude oil to Brio Petroleum, Inc. via Exxon Pipeline, Raccoon Bend Station.
3. Signed statement by an authorized representative of Fina Supply, Inc. certifying that the amount drawn hereunder represents balances due from Brio Petroleum, Inc.

Special Instructions:

Partial Drawing Prohibited

Draft may not be presented prior to November 23, 1981

Drafts must be drawn and negotiated not later than November 30, 1981.

The letter of credit was amended by instrument dated November 30, 1981, as follows:

a) No. 1 under accompaniments shall include deliveries during November and December, 1981.
b) No. 2 under accompaniments shall include deliveries via Hope Station and/or Rosanky.
c) Under Special Instructions: Drafts may not be presented prior to 1 (one) day after agreed payment date.
d) Expiration is extended to January 31, 1982.

Subsequently, the letter of credit was amended three more times. On January 15, 1982, it was amended solely as follows: "Expiration date is extended to February 26, 1982 from January 31, 1982. All other terms and conditions shall remain the same." The third amendment extended the expiration date to March 31, 1982, with no other change. Finally, the fourth amendment to the letter of credit dated March 29, 1982, provided only: "Expiration date is extended to May 31, 1982 from March 31, 1982. All other terms and conditions shall remain the same."

On May 24, 1982, Scott McEwen, manager of crude oil acquisition with Fina, tendered a draft and supporting documentation under the letter of credit to the Abilene National Bank. McEwen testified that Kiser received the documents and informed him that they would be reviewed, that she would personally contact him if there were any problems with the documents, and that Fina would be paid within three days if there were no problems. After examination of the documents by the attorney for Abilene National Bank, Fina was informed that the draw documents did not strictly comply with the terms and conditions of the letter of credit, as amended. Payment was refused, and the instant cause resulted. Fina insists that this Court is presented with a common-law fraud case. Abilene National Bank argues that this is a letter of credit case.

The allegations, facts, and prayer for relief contained in Fina's pleadings required Fina to make an election of remedies between reformation and a suit for fraud. The Texas Supreme Court in *Custom Leasing, Inc. v. Texas Bank & Trust Company of Dallas*, 491 S.W.2d 869, 871 (Tex.1973) declared:

> An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts.

Reformation and rescission, both equitable remedies, are considered to be alternative to, and inconsistent with, a party's damage claim for fraud which arises out of the same state of facts. See 14 DORSANEO, TEXAS LITIGATION GUIDE sec. 336.-07[4] (1985); see also *Uvalde Const. Co. v. Joiner*, 132 Tex. 593, 126 S.W.2d 22, 24 (1939); *Dixon v. Brooks*, 604 S.W.2d 330, 334–35 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Reynolds Brothers, Incorporated v. Dodson*, 380 S.W.2d 678, 681–82 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Blum v. Elkins*, 369 S.W.2d 810, 812 (Tex.Civ.App.—Waco 1963, no writ). As an analogy to an action for reformation, it is a well established principle that a party cannot, on the same state of facts, have both rescission and damages for fraud; rather, an election must be made. See *Uvalde Const. Co. v. Joiner, supra; Dixon v. Brooks, supra.* The reasoning which underlies the election of remedies doctrine in a rescission setting is that rescission, based on fraud, seeks to cancel the contract and recover damages; whereas an action for fraud, although alleging damages, affirms the contract. Likewise, when a party pleads, as was done in the instant case, for reformation based on fraud and also seeks damages based on fraud, two inconsistent and alternative remedies are present. Reformation asks the court to correct a written instrument which, due to mutual mistake or unilateral mistake accompanied by inequitable conduct or fraud, does not represent the true intent of the parties. See, e.g., *First National Bank of Andrews v. Jones*, 635

S.W.2d 950, 952–53 (Tex.App.—Eastland 1982, writ ref'd n.r.e.); *Stegall v. Fulwiler*, 423 S.W.2d 182, 186 (Tex.Civ.App.—Amarillo 1967, no writ); *Meador v. Ivy*, 390 S.W.2d 391, 392 (Tex.Civ.App.—San Antonio 1965, no writ). When, however, an action for damages based on fraud is sought, the party seeks merely to recover the damages occasioned by the fraud.

Although a party may plead, present evidence, and obtain special issues on two or more inconsistent remedies arising from the same state of facts, prosecution of suit to final judgment and obtaining relief under one of the pleaded theories constitutes an election of remedies. See, e.g., *Bocanegra v. Aetna Life Insurance Company*, 605 S.W.2d 848, 853 (Tex.1980); *Redding v. Ferguson*, 501 S.W.2d 717, 720 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.); *Harris v. Christianson-Keithley Company*, 303 S.W.2d 422, 428 (Tex.Civ.App.—Galveston 1957, writ ref'd n.r.e.). As stated by the court in *Harris*:

> Plaintiff, having been allowed one of the two inconsistent prayers for relief, is, it seems to us, in the position of having induced the very action which the court took and is not in position to complain on the general principle, as announced by the Supreme Court of Iowa in *Dow v. McVey*, 174 Iowa 553, 156 N.W. 706, 707: "If two inconsistent prayers for relief be made, the court can properly grant but one, and, if it grants one, the plaintiffs can make no valid complaint because it denied the other."

Fina's prosecution of this suit to judgment based on fraud resulted in the election of fraud as the remedy under which Fina obtained redress for the alleged wrongdoing of Abilene National Bank.

The basis for Fina's cause of action for fraud was that Abilene National Bank misrepresented Fina's rights of coverage under Letter of Credit No. 1342 for exchange imbalances through April 1982. Fina argues that Abilene National Bank had loaned a substantial sum of money to Brio and that this loan would have been in jeopardy if Fina ceased delivering crude oil to

the Brio refinery. The recovery based on the alleged fraud was founded on the jury's "we do" answer to the special issue which inquired:

Do you find from a preponderance of the evidence that prior to March 26, 1982 (the date of the Fourth Amendment to Letter of Credit No. 1342) Abilene National Bank knowingly or recklessly made false representations and/or statements of material facts to Fina regarding Letter of Credit No. 1342 and its amendments with the intention of inducing Fina to exchange crude oil with Brio in reliance on the false representations and/or statements and that Fina suffered damages as a direct result of its reliance on the representations and/or statements by Abilene National Bank?

■ Abilene National Bank, by Point of Error No. 15, contends that the alleged misrepresentations cannot qualify as "material misrepresentations" sufficient to support a fraud judgment. Specifically, Abilene National Bank argues that the alleged misrepresentations concerning the coverage provided by the letter of credit relate to and concern the legal effect of a document and, therefore, must be treated as mere statements of opinion. We agree.

The misrepresentations upon which Fina claims reliance were made by Kathy Kiser. According to the testimony at trial, several Fina employees contacted Kiser for the purpose of inquiring about the coverage afforded by the amendments to the letter of credit. Such inquiries were prompted by Fina's desire to be covered and the fact that the last three amendments to the letter of credit reflected only that the expiration date had been extended. Kiser, according to Fina, represented that the extension of the expiration date of the letter of credit also operated to extend the months in which the delivery of oil to Brio would be covered. Moreover, Fina contends that Kiser informed James Steven Reese, a Fina employee, that all deliveries to Brio, at any location, would be covered under the letter of credit up to the value of $4.5 million.

It is a well established principle that a misrepresentation as to a matter of law or the legal effect of a document is, generally, not a misrepresentation sufficient to support an action for fraud; rather, the representation is to be regarded as a mere expression of an opinion. See *Bifano v. Econo Builders, Inc.*, 401 S.W.2d 670 (Tex. Civ.App.—Dallas 1966, writ ref'd n.r.e.); *Dial Temp Air Conditioning Company v. Faulhaber*, 340 S.W.2d 82 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.); *General Accident Fire and Life Assurance Corp. v. Marker*, 298 S.W.2d 848 (Tex.Civ.App.—Galveston 1957, writ ref'd n.r.e.); *Mann v. Rugel*, 228 S.W.2d 585 (Tex.Civ.App.—Dallas 1950, no writ); *Guitar Trust Estate v. Boyd*, 120 S.W.2d 914 (Tex.Civ.App.—Eastland 1938, no writ); *Panhandle & Santa Fe Ry. Co. v. O'Neal*, 119 S.W.2d 1077 (Tex.Civ.App.—Eastland 1938, writ ref'd); *Phipps v. American Nat. Ins. Co.*, 116 S.W.2d 800 (Tex.Civ.App.—Dallas 1938, writ dism'd); *Duncan v. Texas Employers' Ins. Ass'n*, 105 S.W.2d 403 (Tex.Civ.App.—San Antonio 1937, writ dism'd); *Mitchell v. Small*, 45 S.W.2d 403 (Tex.Civ.App.—Austin 1931, no writ); see also *Safety Casualty Co. v. McGee*, 133 Tex. 233, 127 S.W.2d 176 (1939). In 96 A.L.R. 1001 (1935) (quoting *Aetna Ins. Co. v. Reed*, 33 Ohio St. 283 (1877)) the following declaration, applicable to this case, appears:

Misrepresentations, touching a party's legal rights, will generally afford no sufficient reason on which to avoid a contract. Such representations, however erroneous and strongly asserted, are to be treated, when made to a party free to inform himself of his legal rights, as mere statements of opinion.

In *Bifano v. Econo Builders, Inc.*, supra, the appellants contended that the appellees were guilty of fraud in the execution of a lease. The parties had entered into a lease agreement in 1950, and in 1958, the parties decided to renew the lease for an additional ten years. A lease, referred to as the 1960 lease, was subsequently executed. S.J. Bifano, upon noticing a difference in the property descriptions contained in the 1950 and 1960 leases, asked

Leslie Hill to explain the difference. Hill informed Bifano that the 1950 lease description was a requirement of the lending agency, that such description was no longer a requirement, and that no difference existed in the leases as to property covered. Appellant contended that such statements by Hill were fraudulent misrepresentations which induced the execution of the 1960 lease. The court, disagreeing with the appellants, stated:

[I]t appears without dispute that there was nothing to prevent Bifano from reading the lease or having it read to him or examined by his attorney; and under those circumstances he must be charged with its stipulations and terms and is not justified in relying on what the other party to the contract said about it. Since both parties had equal means of knowing what property the 1960 lease covered, and no artifice or fraud was employed to prevent Bifano from making his own examination and arriving at his own conclusion, Hill's statement must be regarded as a mere expression of opinion, and not a misrepresentation of a material fact upon which Bifano was legally entitled to rely. *Guitar Trust Estate v. Boyd*, Tex. Civ.App. [1938], 120 S.W.2d 914, 918, no wr. hist.; *Whitsel v. Hoover*, Tex.Civ. App. [1938], 120 S.W.2d 930, wr. dism.

This Court's holding in *Guitar Trust Estate* is also applicable to the instant case. S.A. Boyd and her husband filed suit against Guitar Trust Estate alleging the existence of fraudulent misrepresentations in the execution of certain deeds. The fraudulent misrepresentations, upon which the Boyds claimed reliance, were that certain lots which the Boyds owned were of no value and that it would be impossible for the Boyds to obtain a permit to drill an oil well. This Court stated:

In general one must rely on his own judgment and investigate before entering into transactions with others. "The law does not place a premium on negligence or unreasonable credulity. Prudence and

diligence should be exercised in the execution of contracts."

*       *       *       *       *       *

The parties were in the possession of all the facts.... [W]e are of the opinion that any statement that it would be impossible to obtain a permit to drill on the lots involves a mere opinion which in a large sense, if not altogether, constitutes an opinion upon a question of law; in other words, an expression of a legal opinion not amounting to legal fraud.

Moreover, speaking of the alleged misrepresentation as to the value of the lots, the court, quoting from Texas Jurisprudence, declared:

[I]f the parties have equal means of knowledge and no artifice or fraud has prevented the person to whom the representation was made from making an examination and forming a judgment in respect to the matter, the representation is to be regarded as a mere expression of opinion.

The Supreme Court of Oregon, in *Ball v. Associated Oil Co.*, 151 Or. 383, 50 P.2d 125 (1935), confronted facts similar to those in the present case. On February 21, 1929, the Ball plaintiffs leased certain premises to the Associated Oil Company. On the same day, the parties entered into a license agreement whereby the Associated Oil Company, as licensor, granted to the Ball plaintiffs the right to use the leased property solely for the purpose of reselling therefrom petroleum products purchased by the Ball plaintiffs from Associated Oil Company. On May 20, 1929, the parties entered into a modification agreement. No dispute existed as to the execution of the lease, the license agreement, or the amount of gasoline which the Ball plaintiffs purchased for resale. There was, however, a dispute concerning the meaning of the modification agreement. According to the Ball plaintiffs, their signatures on the modification agreement were procured through the fraudulent misrepresentation of Associated Oil Company. The Ball plaintiffs claimed that the Associated Oil Company represented that, under the terms of the

modification agreement, plaintiffs would receive eight cents per gallon instead of the seven cents per gallon previously received under the original lease and license agreements. The Oregon Supreme Court responded to the plaintiffs' argument by stating:

> The plaintiffs were experienced gasoline dealers and were transacting business with the defendant oil company at arm's length. No fiduciary relationship existed. They had purchased gasoline from the defendant under similar contracts for a period of twelve years and, without doubt, had a fair understanding of their terms. It is admitted that the modification letter or agreement in question was read by plaintiffs before they affixed their signatures thereto. Hence plaintiffs had no right to rely upon any representation of the defendant as to the legal effect of the instrument they signed. It spoke for itself in plain and unambiguous language. If the rule were otherwise, there would be no certainty or stability in written contracts. Assuming that the alleged representation was made, it concerned a matter of law and not one of fact.

Paul Rugel, in *Mann v. Rugel*, supra, brought an action against Roy Mann and his alleged agent for fraudulent misrepresentations connected with a lease and the sale of store fixtures. Mann was in possession of certain premises under a long-term lease which restricted the use of the premises to a "retail store and not otherwise." Desiring to sell the fixtures and sublease the property, Mann listed the property with a real estate broker, J.A. Smith. Smith and Mann placed an advertisement which read: "Barbecue location. Best available site in City." Rugel desired to operate a barbecue stand on the premises, and upon questioning, Mann and Smith told Rugel to conduct his own examination as to the effect of the limiting language of the original lease. Rugel conducted no such examination, but chose to rely upon Mann and Smith's advertisement. After the sublease had been executed, Rugel learned that the owner of the premises would not permit a barbecue stand. Rugel filed suit alleging that the advertisement was a fraudulent misrepresentation which induced Rugel to consummate the transaction. Disagreeing with Rugel's contention of fraudulent misrepresentation, the *Mann* court held:

> "If the purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or his agents, he cannot be heard to say that he was deceived by the vendor's representation ... It is his own folly ... not to use the means of knowledge within his reach...." 1 Story's Equity, sec. 284; *Jones v. Herring*, Tex. Civ.App. [1929], 16 S.W.2d 325.... "A misrepresentation as to the legal effect of a lease is not of itself actionable fraud." 35 Cor.Jur. 1162, sec. 433, Note 26; 51 C.J.S., Landlord and Tenant, sec. 223.

\*  \*  \*  \*  \*  \*

In *Kinchen v. Austin*, Tex.Civ.App., 179 S.W. 924, it was held that where a party told his assignee the legal effect of the assignment, that constituted an expression of opinion and did not constitute fraud.

In *Phipps v. American Nat. Ins. Co.*, supra, W.E. Phipps, appellant, alleged fraud in the procurement of a release of liability under an insurance policy. The jury found that an agent for appellee stated to Phipps, at the time of signing the release, that "$1.20 was all that was due him, due to the fact that the policy had been in effect only a short time." It was further found by the jury that such was a material misrepresentation which was relied upon by Phipps in signing the release. Ruling on the nature of the alleged misrepresentation, the *Phipps* court held:

> The parties were on equal footing, no fiduciary or confidential relationship existing. The plaintiff knew the policy had been in effect only a short time, and we conclude the statement in question to be no more than the expression by the agent of his opinion as to the policy, and

not a statement of fact on which to predicate actionable fraud.

In *Mitchell v. Small,* supra, Lillie Small executed and delivered to Clyde B. Mitchell and Frank Woodward an oil and gas lease. Mitchell, however, was unable to obtain a drilling contract because title to the lands was disputed on account of provisions in the deed from J.P. McCord to Small. In his suit against Small, Mitchell proclaimed that Small fraudulently misrepresented to him that she had good title to all the minerals, that it would not be necessary for him to secure an abstract of title, and that she had full power and authority to execute the lease. Finding that the misrepresentations did not constitute actionable fraud, the *Mitchell* court stated:

> We do not think that the statements of Mrs. Small could in any event be construed to be misstatements of a fact. They appear rather to relate to a question of law as to what estate passed to her under the deed and what her authority was in making a lease thereunder. Such representation as to a question of law could not be made a basis of a charge of fraud. *McGary v. Campbell* (Tex.Civ.App. [1922]) 245 S.W. 106, 115. And even if her statements be not mere expressions of opinion as to the legal effect of the reservation in the deed, they could not be construed other than merely her opinion with reference to a matter as well known to Mitchell as to herself; and one in which his judgment was as good as her own. Certainly sources of information on the matters complained of were equally open to both parties, no confidential relationship existed, and her statements were manifestly no more than expressions of opinion by Mrs. Small, which would not sustain an action for fraud. *Huffmaster v. Toland* (Tex. Civ.App. [1923]) 250 S.W. 468.

A misrepresentation as to a matter of law or the legal effect of a document can constitute actionable fraud if the person making the misrepresentation possesses superior knowledge or if a confidential or fiduciary relationship exists between the parties. See, e.g., *General Accident Fire and Life Assurance Corp. v. Marker,* supra; *Squyres v. Christian,* 242 S.W.2d 786 (Tex.Civ.App.—Texarkana 1951, writ dism'd); *Klindworth v. O'Connor,* 240 S.W.2d 470 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.); *Duncan v. Texas Employers' Ins. Ass'n,* supra. Although Fina argues that Kiser possesses superior knowledge as to letters of credit and that a fiduciary relationship existed between Fina and Abilene National Bank, this Court disagrees with both contentions.

The evidence adduced at trial does not reveal that Kiser had any special knowledge in letter of credit transactions. Kiser had no formal training pertaining to letters of credit, and her knowledge regarding the effects which the amendments had on the letter of credit could not be said to be greater than or superior to the knowledge which was possessed by Fina. Any representations made by Kiser do not, therefore, escape the general rule that misrepresentations as to a matter of law or the legal effect of a document are merely opinions.

With regard to the claim of a confidential or fiduciary relationship, the record does not support such a contention. All evidence clearly indicates that the parties dealt with each other at arm's length and that both were equally knowledgable of all the facts. See *Roan v. Reynolds,* 364 S.W.2d 763 (Tex.Civ.App.—Amarillo 1963, writ dism'd); *Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); see also *Bifano v. Econo Builders, Inc.,* supra.

Fina also contends that the alleged misrepresentations are to be regarded as actionable fraud since they were intended and understood as misrepresentations of fact. This Court disagrees.

It has been stated that "misrepresentations involving a *point of law* will be held actionable misrepresentations of fact if it appears that they were so intended and understood." (Emphasis added) *Garsee v. Indemnity Ins. Co. of North America,* 47 S.W.2d 654 (Tex.Civ.App.—Beaumont 1932, no writ); see also *Safety Casualty Co. v.*

*McGee,* supra; *Marlow v. Medlin,* 558 S.W.2d 933 (Tex.Civ.App.—Waco 1977, no writ); *Askew v. Smith,* 246 S.W.2d 920 (Tex.Civ.App.—Dallas 1952, no writ); *Squyres v. Christian,* supra; *Bankers Life & Loan Ass'n v. Pitman,* 115 S.W.2d 1008 (Tex.Civ.App.—Austin 1938, no writ); 41 TEX.JUR.3d *Fraud and Deceit* sec. 19 (1985); 37 C.J.S. *Fraud* sec. 55 (1943); 37 AM.JUR.2d *Fraud and Deceit* sec. 77 (1968). A careful study of the cases and authorities which have made reference to the above statement or exception clearly reveals that neither the cases nor the exception itself are applicable to the case at bar.

*Askew v. Smith,* supra, cited by Fina as support for its position that the alleged misrepresentations were intended and understood as representations of fact, dealt with a misrepresentation as to the law of a foreign state. A misrepresentation regarding the law of a foreign state is a separate and distinct exception to the general rule that a misrepresentation of a matter of law is not actionable as fraud. No misrepresentation of a foreign law is present in the instant case; thus, *Askew* fails to support Fina's position.

The court in *Safety Casualty Co. v. McGee,* supra, also cited by Fina, based its holding upon the existence of special knowledge and not upon a finding that the misrepresentations were intended and understood as representations of fact. Special knowledge is lacking in the present case.

The holding in *Garsee v. Indemnity Ins. Co. of North America,* supra, rested upon the allegations of special knowledge, ignorance, and confidential relations contained in appellant's petition. Neither special knowledge nor ignorance nor confidential relations exist in the case at bar.

Likewise, while the court in *Squyres v. Christian,* supra, recognized that misrepresentations involving a point of law can be held as actionable misrepresentations of fact if so intended and understood, the court rested its holding upon a confidential and fiduciary relationship and the existence of special knowledge.

In addition to, and perhaps more important than, the distinguishing characteristics of many of the cases which have stated the exception that misrepresentations of a point of law can be actionable misrepresentations of fact if it appears that the representations were so intended and understood, a review of the exception makes it apparent that the exception is only applicable when a misrepresentation of law, as opposed to a misrepresentation regarding the legal effect of a document, is involved. A clear distinction has not been made between misrepresentations of law and misrepresentation of the legal effect of a document. Many of the rules and exceptions are equally applicable to both; nevertheless, distinctions exist. The cases which have applied the exception that misrepresentations involving a point of law can be actionable fraud if so intended and understood have applied such to situations wherein one clearly misrepresents the law. Moreover, in every case wherein the exception is mentioned, it is mentioned in reference to a point of law.

*Marlow v. Medlin,* supra, cited by Fina, and *Bankers Life & Loan Ass'n v. Pitman,* supra, applied the exception, but the complained-of misrepresentation in both cases related to a matter of law and not to the legal effect or interpretation of a document.

■ If an individual misrepresents a point of law, such is generally not actionable as fraud due to the presumption that everyone knows the law. See *Marlow v. Medlin,* supra. It is when the misrepresentation is actually intended and understood to be a representation of fact that the exception becomes applicable. The complaining party is not presumed to know the law in such a situation because the representation was expressed as a fact upon which equal knowledge did not exist. When, on the other hand, a misrepresentation regarding the legal effect or interpretation of a document is made, all parties remain equally capable of reading the doc-

ument and relying upon their own judgment. It matters not that the one making the misrepresentation proclaims his interpretation to be one of fact. The other party remains free to interpret the document and inform himself of his legal rights thereunder.

The parties in the instant case were on equal footing. There was no special knowledge or fiduciary relationship. Fina and Abilene National Bank both had the advice of legal counsel. The record shows that Fina sought and obtained the advice of in-house legal counsel with regard to the original letter of credit and its first amendment. Repeated dealings resulted in the second, third, and fourth amendments, and the testimony showed that Fina wholly failed to consult with its attorney with reference to such amendments. Other sources of information concerning the matters of complaint were open to both parties. Kiser's representations pertained to a matter which was as well known to Fina as to Kiser. The representations related to a matter that rested merely in the personal judgment of Kiser, and nothing in the relationship of the parties justified Fina's reliance upon Kiser's opinion. No fraud intervened which would have prevented Fina from making its own independent examination of the documents and arriving at its own conclusion. We hold that Kiser's representations are her own opinions as to the legal effect of the documents, and those opinions cannot support a judgment for fraud.

Our holding on this point of error makes it unnecessary to consider the other 50 points. The judgment of the trial court is reversed, and judgment is rendered by this Court that Fina take nothing.

## ON MOTION FOR REHEARING

Fina urges that this Court erred in reversing and rendering judgment that it take nothing. Fina contents that the doctrine of election of remedies is not applicable and, therefore, a judgment based on reformation of the letter of credit should have been entered. See TEX.R.CIV.P. 434.

We disagree with Fina's contention regarding the inapplicability of the doctrine of election of remedies. However, should we be in error, Fina is not entitled to a judgment based upon reformation of the letter of credit. Reformation of an instrument can be based upon either mutual mistake or unilateral mistake accompanied by inequitable conduct or fraud. See *St. Paul Fire & Marine Ins. Co. v. Culwell,* 62 S.W.2d 100 (Tex.Comm'n App.1933, judgment adopted); *Conn v. Hagan,* 93 Tex. 334, 55 S.W. 323 (1900); *First National Bank of Andrews v. Jones,* supra; *Stegall v. Fulwiler,* supra; *Meador v. Ivy,* supra.

The plea which Fina has made for reformation is founded upon allegations of unilateral mistake and fraud. Since Kiser's representations do not amount to fraud so as to support a judgment based upon fraud, those same representations cannot constitute fraud so as to support a judgment based upon reformation due to unilateral mistake and fraud. Without fraud, unilateral mistake will not entitle a party to reformation. See *Sun Oil Co. v. Bennett,* 84 S.W.2d 447 (Tex.Comm'n App.1935, opinion adopted); *St. Paul Fire & Marine Ins. Co. v. Culwell,* supra; *Lander Lumber Co. v. Williams,* 250 S.W.2d 317 (Tex.Civ.App. —El Paso 1952, writ ref'd n.r.e.).

The motion for rehearing is overruled.