Affirmed and Memorandum Opinion filed April 3, 2007








Affirmed and Memorandum Opinion filed April 3, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00956-CV

____________

 

IRIS REYES SOTO, Appellant

 

V.

 

INTERNATIONAL MEDICAL GROUP, INC.
AND SIRIUS INTERNATIONAL INSURANCE CORP., Appellee

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 02-59082

 



 

M E M O R A N D U M   O P I N I O N








Iris Reyes Soto purchased medical insurance from
International Medical Group (AIMG@) while she worked
for the Honduran Consulate in Houston, Texas.  She submitted application
materials indicating that she had no health problems.  Subsequent to her
application, Ms. Reyes underwent a hysterectomy.  IMG rescinded Ms. Reyes=s insurance
coverage for all of her medical bills due to what they deemed material
misrepresentations on her application for insurance.  Ms. Reyes filed suit
raising numerous grounds for relief.  A bench trial was held, and the trial court
entered findings of fact and conclusions of law after determining that Ms.
Reyes had no valid claim.  Ms. Reyes now appeals some of those findings and
conclusions.  We affirm.

Factual and Procedural Background

Iris Reyes Soto,[1]
appellant, is a citizen of Honduras.  In 1999, Ms. Reyes moved to Houston to
work for the Honduran Consulate.  She remained in that office until the end of
2002, when she returned to Honduras.  In July 2000, Ms. Reyes applied for
insurance coverage that was specifically targeted to individuals residing or
traveling for an extended period of time outside of their home countries, known
as Global Medical Insurance (AGMI@).  Ms. Reyes
submitted a Aclean@ applicationCthat she had no
medical history to reportCand IMG approved coverage.

IMG is an Indiana Corporation and serves as managing
general underwriter and insurance plan administrator for various insurance
companies, including Sirius.  Sirius, a Swedish Corporation, is the insurance
company for whom IMG manages GMI.  IMG issues the master GMI policy to a trust
in Indiana, and then issues certificates and declarations of insurance.  Ms.
Reyes received such a certificate.  We will refer to the appellees collectively
as AIMG.@








Ms. Reyes learned of GMI through Rodolfo Beltran, an
independent insurance broker based in Texas.  Mr. Beltran offered the insurance
to the workers at the Consulate, and conducted all explanations in Spanish. 
Ms. Reyes decided to apply for coverage under GMI, and Mr. Beltran provided a
copy of the application in Spanish.  The application asked for answers concerning
the applicant and each family member.  Ms. Reyes testified that she understood
the application sought information about her, as well as her family=s, medical
history.  In response to the questions regarding medical history, Ms. Reyes
answered that she was in good health, without any recent medical consultations
or diagnoses.  

Upon the basis of Ms. Reyes=s clean
application, IMG decided to approve insurance on her behalf.  According to IMG,
if a clean application is received, it is approved without further underwriting
decision making.  Approximately one year later, Ms. Reyes ratified her original
statements of good health.  However, an IMG examination of Ms. Reyes=s medical records
belied those claims.

Although Ms. Reyes claimed that she had no knowledge of the
medical diagnoses described in her medical records, the evidence indicated that
her doctors discussed some of the problems with her.  The most serious problems
not disclosed on her application, according to IMG=s medical expert,
were the complications surrounding the female climacteric, or menopause, and
her bouts of depression.  Ms. Reyes, however, attempted to discredit those
diagnoses, which included vaginitis, abnormal vaginal discharge and bleeding,
and a pelvic ultrasound revealing fibroid tumors.  

Due to what IMG deemed to be material misrepresentations on
Ms. Reyes=s application, it rescinded her insurance coverage. 
Ms. Reyes filed suit for compensatory and exemplary damages, asserting claims
under the Texas Insurance Code, the Deceptive Trade Practices Act (ADTPA@), and common law
claims of breach of contract, breach of express and implied warranties, breach
of the duty of good faith and fair dealing, fraud, and negligence per se. 
Before trial, IMG negotiated reduced payments for Ms. Reyes=s medical bills
and obtained releases on its and Ms. Reyes=s behalf.  The
trial court found that Ms. Reyes had made material misrepresentations to IMG
and therefore that IMG was not liable under any of Ms. Reyes=s theories.  








Ms. Reyes timely filed notice of appeal and raises several
issues relating to the judgment below.  She has listed her issues as: (1)
defendants failed to plead and prove right to recision; (2) defendants are
estopped from claiming, or waived any misrepresentation; (3) defendants= plea of payment
obligates them for attorney=s fees; (4) the court=s denial of mental
anguish damages to Ms. Reyes was against the great weight and preponderance of
the evidence; (5) defendants violated the Texas Insurance Code and Deceptive
Trade Practices Act as a matter of law; and (6) a plea of payment is no defense
to attorney=s fees and to additional damages under Insurance Code
section 21.55.  Within these grounds, Ms. Reyes raises several sub-issues.  To
better facilitate resolution of her claims, and for the sake of clarity, we
have consolidated and reorganized her issues as follows: (1) it was IMG=s burden to prove
fraud necessary for recision and it failed to do so; (2) the evidence of
materiality of the misrepresentation should have been excluded; (3) materiality
requires expert testimony, which was not presented; (4) IMG=s failure to
establish a claim for recision entitles Ms. Reyes to damages under the
Insurance Code and for attorney=s fees; and (5) the case should be
remanded to the trial court on questions of extracontractual damages and mental
anguish.

We affirm because  the record supports the trial court=s findings and
conclusions that Ms. Reyes materially misrepresented her medical condition to
IMG and therefore cannot recover under any of her theories.

Analysis

I.        Proving
the Misrepresentation 

Ms. Reyes raises numerous arguments related to the trial
court=s
misrepresentation findings.  We will address her claims: that IMG did not plead
any elements of recision, certain evidence should have been excluded, certain
expert testimony was required to prove  materiality, language used in the
application did not apply to her, and finally that the evidence does not
support the judgment.  

 

 








A.      IMG Pled
Recision

Ms. Reyes claims that IMG failed to plead recision. 
However, her argument is two fold.  First, she argues that IMG failed to plead
any elements of recision.  Second, she contends that because IMG also pled
accord and satisfaction, and payment, recision was not properly pled as it is
inconsistent with those other pleadings.  We disagree with Ms. Reyes.

IMG=s second amended answer sets out as its
second, third and eleventh defenses the affirmative defenses of material misrepresentation,
fraud, and recision under the insurance contract.  That pleading complies with
Texas Rule of Civil Procedure 94 concerning affirmative defenses.  Ms. Reyes
has cited no authority whatsoever that would support her contention that the
defense was deficiently pled.  The only authority she cites concerns the
necessity of specifically pleading recision.  See Argee Corp. v. Solis,
932 S.W.2d 39, 66 (Tex. App.CBeaumont 1995), rev=d on other grounds, 951 S.W.2d 384
(Tex. 1997); Burnett v. James, 564 S.W.2d 407, 409 (Tex. Civ. App.CDallas 1978, writ
dismissed); Freeman v. Anderson, 119 S.W.2d 1081, 1083 (Tex. Civ. App.CWaco 1938, no
writ).  Those cases do not mandate that a party plead each particular element
of recision, as Ms. Reyes contends.  Rather, they require that recision be pled
specifically, rather than allowing it to be included in a general prayer for
relief.  In this case, recision was specifically listed as an affirmative
defense.  Therefore, Ms. Reyes=s argument of failure to specifically
plead recision fails.

Alternatively, Ms. Reyes contends IMG cannot prevail on its
assertion of recision because it is a remedy inconsistent with IMG=s assertion of
accord and satisfaction, and payment.  In support of her argument, she cites Abilene
Nat=l Bank v. Fina Supply, Inc., 706 S.W.2d 737
(Tex. App.CEastland 1986), affirmed in part, disapproved in
part, Fina Supply, Inc. v. Abilene Nat=l Bank, 726 S.W.2d 537
(Tex. 1987).  According to Ms. Reyes, IMG=s pleadings were
defective in that it allegedly failed to plead affirmative defenses in the
alternative.  However, her reasoning is flawed in several respects.  








The Eastland Court of Appeals specifically noted that a
party may plead, present evidence, and obtain special issues on inconsistent
theories.  Abilene Nat=l Bank, 706 S.W.2d at
739.  Yet, the court held that the party must make an election of remedies.  Id. 
That ruling was not connected to pleading requirements.  The Texas Supreme
Court then considered the case, and determined that the court of appeals had
erred in its analysis of that issue.  Fina Supply, 726 S.W.2d at 541. 
The supreme court explained that the doctrine of election of remedies is
designed to prevent a party that has obtained a specific form of remedy from
obtaining a different and inconsistent remedy for the same wrong.  Id. 
The supreme court also noted that the doctrine is not favored and its scope
should not be extended.  Id.  The supreme court=s reasoning did
not affect or alter pleading requirements.

Ms. Reyes has not explained in what way the doctrine of
election of remedies is implicated in this case.  Indeed, we cannot discern in
what way the trial court=s ruling allows for two different and
inconsistent remedies for the same wrong.  Additionally, to accept Ms. Reyes=s argument would
expand the scope of the doctrine beyond its intention so as to affect pleading
requirements.  Clearly, that is not favored.  See id.  We overrule this
issue.

B.      Trial
Court did not Abuse its Discretion in Admitting Evidence








Ms. Reyes argues that Dr. Kete Cockerel=s testimony should
have been excluded because he was allegedly not designated as an expert prior
to trial, and IMG failed to disclose his mental impressions and opinions prior
to trial.[2] 
IMG counters that its disclosure was in compliance with the docket control
order because it designated Dr. Cockerel as an expert,  disclosed the topic of
his testimony, and gave the basis for his testimony at trial.  IMG also notes
in its brief that Ms. Reyes had almost an entire year to depose Dr. Cockerel,
but chose not to do so.

Whether to admit or exclude evidence is within the trial
court=s sound
discretion.  State v. Bristol Hotel Asset Co., 65 S.W.3d 638, 647 (Tex.
2001).  A trial court abuses its discretion when it acts without regard to any
guiding rules or principles.  Id.  Determining if a trial court abused
its discretion in making an evidentiary ruling is a question of law.  Id. 
Of course, even if the trial court abused its discretion in admitting the
evidence, we will not reverse unless the error probably caused the rendition of
an improper judgment.  See Moore v. Memorial Hermann Hosp. Sys., Inc.,
140 S.W.3d 870, 873 (Tex. App.CHouston [14th Dist.] 2004, no pet.). 

Texas Rule of Civil Procedure 194.2(f) requires the
following disclosures for any testifying expert:

(1) the expert=s name, address, and telephone
number;

(2) the subject matter on which the expert will testify;

(3) the general substance of the expert=s mental impressions and opinions and a brief
summary of the basis for them, or if the expert is not retained by, employed
by, or otherwise subject to the control of the responding party, documents
reflecting such information;

(4) if the expert is retained by, employed by, or otherwise subject to
the control of the responding party:

(A) all documents, tangible things, reports, models, or data
compilations that have been provided to, reviewed by, or prepared by or for the
expert in anticipation of the expert=s testimony; and

(B) the expert=s current resume
and bibliography

 

Tex. R. Civ. P. 194.2(f).








Ms. Reyes=s chief complaint relates to the alleged
failure to designate Dr. Cockerel as an expert and the alleged failure to
provide the Ageneral substance of the expert=s mental
impressions and opinions and a brief summary of the basis for them . . . .@  Id.  The
trial court entered a docket control order regarding this, and other discovery
issues and stated that a failure to comply would be governed by rule of civil
procedure 193.6.  See Tex. R.
Civ. P. 193.6.  Under Rule 193.6, a party who fails to make, amend or
supplement a discovery response in a timely manner may not introduce in evidence
the material or information that was not timely disclosed or offer the
testimony of a witness who was not timely identified.  Tex. R. Civ. P. 193.6(a).

IMG disclosed the following description of the areas of Dr.
Cockerel=s testimony: APlaintiff=s medical history
and condition@ and A[t]hat plaintiff suffered from various
pre-existing medical conditions that had they been disclosed to defendants,
would have disqualified plaintiff from participation under the GMI policy.@  This description
put Ms. Reyes on notice as to the general substance of Dr. Cockerel=s opinion and
mental impression concerning her insurability under the GMI plan, and that the
basis for that belief was her prior undisclosed medical history and condition. 
Therefore, IMG complied with Rule 194.2(f).  The record does not indicate Ms.
Reyes attempted to depose Dr. Cockerel regarding his impressions and the basis
of those impressions, and so her claims of unfair surprise or prejudice are not
convincing.  As IMG complied with Rule 194.2(f), the trial court did not abuse
its discretion in allowing Dr. Cockerel=s testimony.  We
overrule Ms. Reyes=s issue.

C.      Adequate
Testimony was Admitted on the Issue of Materiality








In her next issue, Ms. Reyes posits that an actuary was
required in order for IMG to prove materiality.  Additionally, she argues that
Dr. Cockerel, who testified regarding the materiality of Ms. Reyes=s
misrepresentations, provided merely conclusory opinions and cannot support the
judgment.  These arguments relate to arguments regarding burden of proof, what
proof was offered, and the sufficiency of that proof.  We disagree with Ms.
Reyes=s contention that
an actuary was required to testify, and also her characterization of Dr.
Cockerel=s testimony.

As a preliminary matter, we must consider Ms. Reyes=s claim that an
expert is required to testify regarding materiality.  Neither party has cited
any binding authority on the question of whether or not an expert is required
on the issue of materiality; certainly, neither party has provided any
authority on whether actuarial testimony is required.  In our research, we have
found no Texas case requiring any particular expertise on the question of
materiality.  Indeed, the test for whether a representation is material is
whether it actually induced the insurance company to assume the risk.  See
Darby v. Jefferson Life Ins. Co., 998 S.W.2d 622, 628 (Tex. App.CHouston [1st
Dist.] 1995, no writ).  That test contains no requirement of expert testimony,
much less that of an actuary.  As we explain below, there was ample evidence
for the proposition that Ms. Reyes=s
misrepresentations caused IMG to provide her insurance without further investigation. 


Although there is no particular expert testimony
requirement on the issue of materiality, IMG provided testimony from Dr.
Cockerel, who makes all final underwriting decisions for IMG when an applicant=s medical history
is an issue.  Although IMG will automatically underwrite an applicant when, as
here, the applicant warrants that her health history is perfect, it will
conduct further review depending on what medical problems are revealed in the
application.  Dr. Cockerel makes those final determinations and testified that
in this case, without question, had IMG known about Ms. Reyes=s problems
surrounding the female climacteric and her history of depression, he would not
have approved her application.  








Dr. Cockerel=s testimony was
not merely conclusory; he discussed each one of Ms. Reyes=s undisclosed
medical problems.  Dr. Cockerel then explained that some of the problems would
not have prevented approval of her application, while twoCdepression and the
female climacteric[3]Cwould have. 
Although Ms. Reyes took issue with Dr. Cockerel=s conclusions, she
did not try to rebut his conclusions except to argue that Dr. Cockerel was not
an actuary.  However, Dr. Cockerel provided the testimony required: the
misrepresentation of perfect health actually induced IMG to assume a risk it
otherwise would not have assumed.  Dr. Cockerel=s testimony was
not merely subjective, but rather was based on his experience, training, and
experience as a physician and the person who makes final underwriting
decisions.  The trial court was free to accept or reject his testimony.  We
overrule this issue.

D.      The
Language in the Application Applied to Ms. Reyes

Next, Ms. Reyes contends within her argument that there was
no proof of a misrepresentation that the Spanish version of the application
referred only to her family, and not to her, and therefore she did not make any
misrepresentations.  However, the trial testimony and application language
clearly indicated that the application asked for questions to be answered for
each person listed on the applicationCincluding the
applicant.  Additionally, Ms. Reyes testified that she understood the
application questions to apply to her.  She testified, however, that she
believed herself to be in good health and that she had no medical history to
report.  Therefore, her testimony established that she gave the answers with
the intent that the insurance company rely on them regarding her personal
medical history; she reaffirmed those same answers later when the insurance
company asked her to ratify her original statement of good health.  Cf.
Darby, 998 S.W.2d at 628 (stating that intent to deceive may be established
as a matter of law when the applicant warrants the representations to be
true).  We overrule Ms. Reyes=s issue.








E.      The
Evidence Supports the Trial Court=s Judgment

Finally, although Ms. Reyes does not brief any issue
specifically as a legal-sufficiency challenge, we will address her fragmented
claims that IMG did not carry its burden of proof and that there was no
evidence that her medical condition prior to insurance coverage amounted to a
material misrepresentation.  Ms. Reyes= issue relates to
her assertion that actuarial evidence was required, that she made no
misrepresentation pursuant to the language of the questionnaire, and that IMG
never proved she made any material misrepresentations.  We have already
addressed this issue to some extent.  However, we will set out the appropriate
standard of review for a no-evidence challenge, and highlight the evidence
supporting the trial court=s judgment. 

A trial
court=s findings are reviewable for legal
and factual sufficiency by the same standards that are applied in reviewing
evidence supporting a jury=s answer.  Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994).  In determining whether legally sufficient evidence supports the
trial court=s findings of fact, we consider the evidence in the light most favorable
to the challenged finding and indulge every reasonable inference that would
support it.  See City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005).  We must credit favorable evidence if a reasonable factfinder could and
disregard contrary evidence unless a reasonable factfinder could not disregard
it.  See id. at 827.  We must determine whether the evidence at trial
would enable a reasonable and fair‑minded person to find the facts at
issue.  See id.  The factfinder is the sole judge of the credibility of
the witnesses and the weight to give their testimony.  See id. at 819. 
Evidence is conclusive only if reasonable people could not differ in their
conclusions.  See id. at 816. 








In this case, there was definitive evidence that Ms. Reyes
had numerous medical conditions diagnosed at the time she submitted her
application to IMG.  These conditions included: (1) treatment of the female
climacteric involving several complicating diagnoses such as fibroid tumors,
vaginal prolapse, and abnormal bleeding; (2) depression; (3) gastro-esophageal
reflux; (4) irritable colon; (5) migraines; (6) hypertension; (7) gastritis;
and (8) iron deficiency anemia.  Ms. Reyes did not disclose any of these
diagnoses to IMG, though she testified that she understood IMG was interested
in her medical history.  

Ms. Reyes testified that she disagreed with some of the
diagnoses, and she also testified that she did not know of others.  However,
the medical records indicated that the treating physicians informed Ms. Reyes
of these medical conditions.  Further, Ms. Reyes=s  testimony was
somewhat contradictory in that she claimed not to know about certain diagnoses,
while at the same time re-characterizing those same diagnoses as known but
simply not serious, thus, not worthy of disclosure to IMG.  However the
application language applied to each person listed on the application, and Ms.
Reyes understood the application wanted to know about her medical history.  The
trial court, therefore, could conclude that Ms. Reyes understood that she had
received these various diagnoses and simply chose not to disclose them.

There is evidence to support the finding Ms. Reyes
specifically disputes: none of the pre-existing medical conditions Awas of a degree or
nature to increase insurer=s risk.@  Dr. Cockerel
provided the only testimony concerning IMG=s risk relative to
the pre-existing conditions.  That uncontroverted testimony was that the
problems surrounding her treatment for the female climacteric and her
depression made her uninsurable under the GMI plan.  Moreover, the evidence was
clear that Ms. Reyes=s complications during menopause were
worsening and were not responding to treatmentCultimately leading
to the very surgery at issue in this case.  The evidence was legally
sufficient.  Rather than having no evidence to support the trial court=s judgment, the
evidence was almost exclusively in support of the trial court=s judgment.  We
overrule this issue.

 

 








II.       Ms.
Reyes cannot Receive Damages

Ms. Reyes finally asks this court to provide her with
damages, or at minimum a remand for a determination of statutory
extracontractual damages and attorney=s fees.  However,
because we affirm the trial court=s determination
that the insurance contract was properly rescinded, Ms. Reyes is not eligible
for damages.  Therefore, we overrule Ms. Reyes=s remaining
issues, which we have restyled as issues four and five.

Conclusion

Having overruled all of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 3, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  At trial, appellant made clear that she preferred to
be addressed as Ms. Reyes.  Therefore, we refer to her by that name in this
opinion.





[2]  Along this line of argument, Ms. Reyes contends that
IMG never disclosed exactly what misrepresentation IMG alleged she had made. 
This issue goes specifically to her estoppel and waiver argument.  However,
that claim was rejected by the trial court, a ruling which is supported by the
record.  First, IMG informed her of which treating doctors= conclusions were in conflict with her answers on the
application.  Second, Ms. Reyes=s testimony at
trial indicated that, at a bare minimum, she knew at the time of her
correspondence that she had been diagnosed with fibroid tumors, and she
disagreed with that medical evaluation.  Her testimony, therefore, indicates
that she had full knowledge of what was in her medical records, and further
understood that those records did not support her claims of good health. 
Finally, as we discuss in this issue, IMG disclosed that it would rely on Dr.
Cockerel to prove up the material misrepresentations, and Ms. Reyes never
deposed him to explore his conclusions or the bases for those conclusions.





[3]  Ms. Reyes asserts in her brief, under her second
issue, that menopause is a normal occurrence for women her age.  Therefore,
because IMG should have been aware of the condition, it is not a valid ground
upon which coverage could be denied.  However, Ms. Reyes was not experiencing
normal menopause.  She suffered from numerous complications listed in her
medical records and eventually required surgery.  Therefore, it is inaccurate
to portray her condition as a normal medical condition that IMG should have
understood and foreseen from her answers of good health.